## 66924. BOLES v. THE STATE.

BIRDSONG, Judge.

Nathaniel Boles was convicted of armed robbery and sentenced to fifteen years with ten to serve. He brings this appeal enumerating in substance two alleged errors. *Held:*

1. In his first enumeration of error, Boles raises the general grounds. The evidence in this case shows that one Kiley, on the evening of the robbery, had consumed too much beer. When he stopped at a stop light on his way home, Kiley fell asleep at the wheel. Shortly thereafter, Boles and a companion observed the car stopped in the middle of the street, and Boles stopped the car he was driving to inquire if the driver of the other car was all right. Kiley awoke, and though there is some dispute as to exactly what transpired, the evidence reasonably shows that Kiley drove home, being followed by Boles and his passenger to see that Kiley made it home safely. Before

leaving the scene, Boles had called Kiley's wife to inform her what had happened to her husband. Accordingly, Mrs. Kiley was awake in spite of the hour (12-1:00 a.m.) and had called her brother-in-law (Lamy) to help.

When Kiley arrived home, he parked his car and started toward the front door of his house. Boles and his passenger also exited their car and started to accompany Kiley to the door. When Kiley stated he was home and everything was all right, Boles and the passenger returned to their car. As Kiley reached his front door, he remembered he had left a package on the front seat of his car and returned to his car to retrieve the package. As Kiley was returning to his car, Boles and his passenger also exited their car for the second time and walked into the yard. As Kiley, walking toward his house, approached the two men, he became alarmed and asked what was going on. Boles' passenger was to the side or slightly behind Kiley and Boles apparently was in front of Kiley. Kiley felt the passenger attempt to remove his wallet from his (Kiley's) pocket and Kiley "slapped" at the thief's hand, whereupon the passenger placed a blue steel revolver in Kiley's side and said, "Cool it! Cool it!" or words to that effect. The wallet was then removed and Boles and the passenger returned at a quick pace to Boles' car and started to back the car away from Kiley's house, which was situated at the beginning of a dead end street. Kiley commenced to yell he had been robbed as the car drove away.

Mrs. Kiley in substance testified that she was awaiting the return of her husband after the phone call and the imminent arrival of her brother-in-law. She stated she stepped up onto a sofa and saw her husband drive up and park the car and then approach the front door. She also saw another car arrive and two men disembark and then return to their car when her husband approached the front door. She then saw her husband return to his car, the two men get out of their car, and the three men come together in a tight group. When the two men returned to their car and started to back away, her husband suddenly started to yell that he had been robbed and ran toward the car. Both the car and her husband passed from her view just before she heard a shot.

The brother-in-law, Lamy, was arriving at the Kiley house at about the same time. He observed two men quickly move from the Kiley's front yard and enter their car and back away. He heard his brother-in-law Kiley yell that he had been robbed. At about that time, the car being operated by Boles side-swiped Lamy's car and both cars came to a stop. Lamy, a probation officer authorized to carry a gun, showed the gun and ordered the car operated by Boles to stop. The passenger yelled that Lamy had a gun whereupon the Boles car sped away in reverse. Lamy fired at the car apparently striking it

in the hood area. Lamy pursued the car to a dead end where Boles stopped. The passenger ran into some woods and in the process lost Kiley's wallet which was recovered. Boles exited from the driver's side and started to run toward the woods. After a twice-repeated order to halt or be shot at, Boles stopped and pleaded, with his hands held high, for Lamy not to fire at him. Lamy returned Boles to the scene where he was identified as one of the robbers.

Opposed to this version of the incident, Boles adduced evidence that he had offered a ride to an unknown person who was hitchhiking. Boles corroborated that he had called Mrs. Kiley and followed Kiley home. Here his story deviated, however, from that of Mr. and Mrs. Kiley. He (Boles) testified that he exited his car and went to the front door to tell Mrs. Kiley her husband had safely returned home. As he got to the front door, Kiley allegedly told him that the baby was asleep and not to knock on the door. Boles' version then was that while he was at the door, the passenger, completely unknown to him, removed Kiley's wallet at gunpoint. Boles' first alleged knowledge of any wrongdoing was after he and his passenger had reentered Boles' auto, and Kiley commenced to yell that he had been robbed. At that point, Boles testified that the hitchhiker pointed a gun at him (Boles) and demanded that he drive away. Throughout the remainder of the episode, including the collision between the two vehicles and the firing of a pistol by Lamy, Boles maintained that he was under the coercion of the passenger's gun. When arriving at the dead end, Boles maintained that the passenger ran into the woods and at that time Boles exited his auto and immediately sought to surrender to Lamy.

We will not speculate as to what evidence the jury chose to believe or disbelieve; on appeal, this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. *Mills v. State,* 137 Ga. App. 305, 306 (223 SE2d 498); *Wren v. State,* 57 Ga. App. 641, 644 (196 SE 146). Where the testimony of the state and that of the defendant is in conflict, the jury is the final arbiter (*Sims v. State,* 137 Ga. App. 264 (223 SE2d 468); *Crews v. State,* 133 Ga. App. 764 (213 SE2d 34)), and after the verdict has been sustained over a motion for new trial, the evidence should be construed so as to uphold the verdict and judgment. *Glover v. State,* 237 Ga. 859, 860 (230 SE2d 293). Viewing the evidence in that light, we entertain no doubt that a rational trier of fact could find beyond reasonable doubt the guilt of the appellant as a principal to the crime of armed robbery. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528). This enumeration is without merit.

2. Boles bases his other two enumerations of error on jury misconduct. At the motion for new trial, evidence was offered by Boles from two of the jurors who decided the question of guilt. One of

these jurors testified that, after all the evidence had been submitted and during an overnight recess, she caused her husband to drive her by the area where Kiley's house was located. There had been evidence offered in open court that Kiley's house was on a dead end street, that his house was at a certain point on that street, that there was a light in front of the house and similar evidence as to distances and locations. The witness (juror) testified that her physical observation tended to corroborate and support the descriptions that had previously been brought out in court. She related her observations to the other jurors and they discussed her observations. She did not believe these observations had an impact upon the determinations of guilt. Another juror testified that there had been discussion concerning one or more of the juror's physical observation or knowledge of the area (several of the jurors were intimately aware of the area). These conversations dealt with the distances involved and led to the jurors' apparent conclusion that from her position within the house, Mrs. Kiley could not have seen all she testified she did see. Thus, part of these improper jury actions led to the discrediting of a state's witness.

We are faced with obvious jury misconduct which resulted in error in the trial proceedings. Our inquiry thus must be directed to whether this error was so inherently prejudicial as to require a new trial. A similar inquiry confronted this court in *Chadwick v. State,* 164 Ga. App. 102 (296 SE2d 398). At p. 103, this court stated: "A similar challenge was raised in *Watkins v. State,* 237 Ga. 678, 683-685 (229 SE2d 465). In that case, two jurors made an unauthorized visit to the scene of the crime during the course of the trial to gauge how much time it took to drive from there to the defendant's home. They then reported their findings to the full jury. The Supreme Court held that under those circumstances the rule that jurors cannot impeach their own verdict . . . was inapplicable and found the juror misconduct on the part of one of the jurors, raised after the trial, to be reversible error. . . . The theory behind the holding was that the jurors in effect had become unsworn witnesses against the defendant in violation of the Sixth Amendment. *Watkins v. State,* 237 Ga. 678, 684, supra.

"The Supreme Court, however, did not fashion a broad rule in *Watkins.* It was careful to reaffirm that the rule prohibiting jurors from impeaching their own verdict was the general rule and it was only made inapplicable by 'the intentional gathering of extra judicial evidence, highly prejudicial to the accused, by members of the jury and the communication of that information to the other jurors in the closed jury room.' We find that the court's inclusion of the words 'highly prejudicial' in that sentence, taken together with the fact that the evidence gathered by the jurors 'explained a critical time lapse in the sequence of events surrounding the alleged crime,' Id. at 683,

distinguishes the case sub judice from *Watkins.*

"... Moreover, [one] of the jurors testified that the verdict was based ... on the evidence adduced at trial and was not influenced by any extrajudicial information. We, therefore, find that the contended juror misconduct in this case was not so prejudicial to defendant as to constitute reversible error. *Watkins v. State,* 237 Ga. 678, supra. The testimony of the jurors at the hearing convinces us that there is no 'reasonable possibility that the improperly admitted evidence contributed to the conviction (and) reversal is not required.' Schneble v. Florida, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340). See *Johnson v. State,* 238 Ga. 59, 60-61 (230 SE2d 869)."

In this case, the identity of the defendant Boles is not in issue; he admitted being at the scene. Nor are the lighting conditions or the various distances of importance, for light, time and distance were not of a critical nature. The only potentially critical evidence could have been the corroborating evidence of Mrs. Kiley and the jury either partially or totally discredited her alleged observations, thus hardly working any prejudice to Boles. Boles' sole defense was that he had picked up an unknown hitchhiker who committed an armed robbery wholly without his knowledge and forced him (Boles) at gunpoint to assist in an attempted escape. The view of the scene, its lighting conditions and the distances involved, or the location of the roads or houses or windows, could have had no appreciable impact on the jury's determination whether Boles acted in concert with his passenger or was equally a victim with Mr. Kiley.

As we held in *Chadwick,* supra, we also here are constrained to conclude the "evidence" produced by the jurors in the closed sessions of the jury deliberations, while erroneous, was not of that type or quality as to raise a reasonable possibility that the improperly admitted evidence contributed to the conviction; thus, the jurors' misconduct is not of such gravity as to require a reversal of this conviction.

Even if we treat the jury misconduct as approaching error of constitutional dimensions, i. e., denial of the right of confrontation, considering the ultimate fact that the juror's information did not go at all to the sole issue determinative of guilt or innocence, e. g., was Boles a willing and active participant in the robbery, we still must conclude that the juror's actions were harmless beyond a reasonable doubt as shown by the evidence adduced at the motion for new trial. Harrison v. United States, 392 U. S. 219 (88 SC 2008, 20 LE2d 1047); *LaRue v. State,* 137 Ga. App. 762, 764 (224 SE2d 837).

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 25, 1983 —
REHEARING DENIED NOVEMBER 18, 1983 — 

*William O. Cox, John R. Calhoun,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney,* for appellee.