## 41212. BOBO v. THE STATE.
(327 SE2d 208)

BELL, Justice.

On December 14, 1980 two Fulton County Police Officers were shot while investigating a burglary of the Precious Metals Trading Corporation store in the Prado Shopping Center. One of the officers, David Hagin, died of his wounds, and the other, Colleen Sullivan, survived. Bobo was indicted for burglary, the murder of Hagin, and the aggravated assault of Sullivan,[1] and was convicted of the three charges. The trial court merged the burglary conviction into the felony murder conviction, and sentenced Bobo to life imprisonment therefor. To this sentence was added a 10-year consecutive sentence for the aggravated assault. For the reasons which follow, we reverse.

1. In his first enumeration of error, Bobo contends that two jurors, Dorothy Wyckoff and Linda Durham, related extra-record information to the rest of the jury, thereby unfairly prejudicing him.[2]

Extra-record statements made by a juror concerning the defendant during the course of jury trial are not presumptively so prejudicial as to infect the verdict and require that the defendant be given a new trial. *Williams v. State*, 252 Ga. 7 (1) (310 SE2d 528) (1984). A jury verdict will not be "upset solely because of such statements unless the statements are so prejudicial that the verdict must be deemed 'inherently lacking in due process.' " Id. at 9 (Cit. omitted.) See *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976). Put another way, a new trial will not be granted unless there is a reasonable possibility that the improper evidence collected by jurors contributed to the conviction. See *Boles v. State*, 168 Ga. App. 904 (2) (310 SE2d 741) (1983), cert. den., 252 Ga. 1 (312 SE2d 299) (1984). However, we find, for the following reasons, that the juror misconduct by the jurors in this case was so prejudicial that Bobo's conviction must be reversed.

---

[1] The crime occurred on December 14, 1980. On July 28, 1981 Bobo was indicted. He was convicted and sentenced March 18, 1982. His motion for new trial was denied April 27, 1984, and he filed his notice of appeal May 3. The appeal was docketed in this court June 1, and we heard oral arguments September 11, 1984.

[2] Although the trial court's preliminary instructions to the jury included a direction to refrain from discussing the case with third parties, the court did not caution against private views of the crime scene. One juror, Linda Durham, testified that she did not understand that she was not supposed to visit the crime scene. Another juror, Dorothy Wyckoff, testified that she had seen nothing wrong about visiting the Prado. Their testimony illustrates that it is incumbent upon trial courts to impress upon the jury that it is not to conduct unauthorized independent visits to the crime scene. See the dissenting opinion of Associate Justice Smith in *Boles v. State*, 252 Ga. 1, 2 (312 SE2d 299) (1984).

In this regard, we recommend the following instruction contained in § 47.10 of the Council of Georgia Superior Court Judges Criminal Benchbook (July 1981): "Do not visit any scenes which may be depicted by the evidence. If the normal route to your home passes by any such scene, please report this to the bailiff who will advise the court. The court will then determine if it may be necessary for you to take a detour during the length of this trial."

Bobo denies that he was the perpetrator. The identity of the assailant of Officers Hagin and Sullivan was therefore a critical issue in this case, as, in turn, were the lighting conditions and other circumstances under which the sole eyewitness, Officer Sullivan, observed her assailant. Cf. *Boles*, supra, 168 Ga. App. at 908. Moreover, post-trial testimony of jurors indicates there is a reasonable possibility that statements by Durham and Wyckoff about extrajudicial evidence substantially impacted the jury's consideration of these critical issues.

Jury foreman James Anthony Burks testified that the jury was concerned with the lighting conditions and size of the Prado shop. He said that Durham and Wyckoff told the rest of the jury that they went to the Prado and were of the opinion that Sullivan could have seen the accused. According to Burks, after the jurors heard Durham's and Wyckoff's statements, the number of votes in favor of a guilty verdict increased. Burks had been voting for acquittal, but their statements created some doubt in his mind.

Juror Nathaniel Barnes testified that Wyckoff told the jurors that she thought that what "Sullivan had observed at the scene was possibly correct because she could see as she visited just about what Officer Sullivan said she could see." According to Barnes, before this information was related to the jury the vote stood at eight to four for acquittal. Afterwards, it shifted to seven to five for conviction, and eventually became unanimous. He said he thought the extra-record information was a major factor in the shift.

Juror Linda Durham testified that she visited the Prado during the trial and looked in the window. She said she visited the store because its dimensions were "a central issue in the case." The store appeared smaller to her than the mental impression she had formed from a diagram introduced by the state, and she reported this to the other jurors. According to Durham, her visit had no impact on her own vote. However, she told the other jurors about it because she was trying to persuade them to vote for a conviction; she did not know whether her statement had the desired effect. She did not tell the jurors about lighting conditions at the store, but she recalled that there was much discussion during jury deliberations about the lighting and what could be seen from the outside window. She recalled that Wyckoff had reported that when she (Wyckoff) went out there she could see from outside to the back of the store.

Juror Dorothy Wyckoff testified that there was disagreement among the jurors over whether Sullivan had adequate lighting to identify her assailant. Wyckoff said that she had been to the Prado many times, and was satisfied that the lighting was sufficient. She said she told the jurors about her opinion in order to convince them that the lighting was good. That evening she drove by the Prado to reassure herself that she was correct. She did not get out of the car,

but she saw enough to satisfy herself that the shopping center was well-lighted. According to her, she had already made up her mind before this visit, and it did not affect her vote. She did not recall whether she had subsequently informed the jury about her latest visit.

Several points are clear from this testimony. It is undisputed that two jurors affirmatively sought to sway their fellow jurors' votes by relating personal observations and opinions concerning facts and circumstances surrounding the crime which were critical to determining the credibility of the sole eyewitness' identification. Moreover, there is some evidence that their statements had the desired effect, since two other jurors testified that the vote shifted in favor of conviction after the improper evidence was introduced into the deliberations, and one of those two indicated the evidence had influenced his vote. Based on this record, we find that there is at least a reasonable possibility that the reports by jurors Wyckoff and Durham contributed to the conviction, and that the verdict must therefore be deemed inherently lacking in due process. "This misconduct cannot be ignored and requires a reversal of the judgment based on the jury's verdict in this case." *Watkins*, supra, 237 Ga. at 685. Cf. *Boles*, supra, 168 Ga. App.; *Maxwell v. State*, 170 Ga. App. 831 (5) (318 SE2d 650) (1984); *Chadwick v. State*, 164 Ga. App. 102 (2) (296 SE2d 398) (1982).

2. In light of our holdings in the first division of this opinion, we need not address Bobo's second, fourth, fifth, and sixth enumerations of error.

3. a. In his third enumeration, Bobo asserts that testimony by Officer Sullivan identifying him as the gunman should have been excluded from evidence. His argument is somewhat difficult to follow, but it appears to be based on two factual allegations. The first seems to be that Sullivan made certain statements while under hypnosis in which she described the Precious Metals gunman. The second appears to be that Sullivan's subsequent identification of Bobo may have been the product of post-hypnotic suggestions by her hypnotist, psychiatrist Dr. Michael Haberman.

Statements made by a person while in a hypnotic trance are inadmissible, as "the reliability of hypnosis has not been established." *Emmett v. State*, 232 Ga. 110 (3) (205 SE2d 231) (1974). Accord *Harper v. State*, 249 Ga. 519, 524 (1) (292 SE2d 389) (1982); *Collier v. State*, 244 Ga. 553 (2) (261 SE2d 364) (1979). However, the record shows that Sullivan was never placed in a hypnotic trance. Dr. Haberman made three attempts to hypnotize her in order to assist her in identifying the killer, but, in Dr. Haberman's opinion, his efforts were unsuccessful.

The record does reflect that Dr. Haberman made post-hypnotic suggestions during his interviews with Officer Sullivan, but these sug-

gestions were solely of a general nature, reassuring her that her memory might improve.[3] Thus, on their face they were not significantly different from the words of encouragement which any interviewer might have offered. Moreover, inasmuch as Sullivan was not actually hypnotized, there is no indication that Dr. Haberman's "suggestions" had an extraordinary effect on Sullivan. We therefore find that appellant has not established that Sullivan's subsequent identification was the product of these suggestions.

For the foregoing reasons, the third enumeration is without merit.

b. In a related enumeration, his seventh, Bobo contends that the entire process through which the identification by Officer Sullivan was obtained was impermissibly suggestive, and that the court therefore erred by denying his motion to suppress her identification testimony. We disagree. Based on the totality of the surrounding circumstances, the identification procedure was not impermissibly suggestive, and was not violative of due process. *Wiley v. State*, 250 Ga. 343 (1) (296 SE2d 714) (1982).

*Judgment reversed. All the Justices concur, except Marshall, P. J., and Weltner, J., who dissent as to Division 1 and the judgment.*

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Tony L. Axam*, for appellant.
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis*, for appellee.

---

[3] Dr. Haberman's exact testimony on this issue was, "I did give her post-hypnotic suggestion, but I think it's going to have to come from my memory, but this is fairly standard procedure when I use hypnosis in these matters. What I usually say, and I generally don't veer from this, this is fairly standard, is to someone who has had either no recall or only partial recall that they may find that their memory will become better, that they may focus on an unfocused image, that that unfocused image may become clear as time goes by, and I leave it very, very general. *I don't suggest any particulars as to what is going to change, if anything.*" (T-1811.) (Emphasis supplied.)