## 42665. FORNEY v. THE STATE.
(338 SE2d 252)

GREGORY, Justice.

Ephrim Forney, Jr. was convicted of murder and sentenced to life imprisonment. His motion for new trial was denied and he now appeals.[1] We affirm the conviction.

In early December 1984, Forney suspected his wife of meeting clandestinely with James Solomon, her co-worker at a factory in Milledgeville. Forney confronted his wife, who told him that she did not want a divorce and wanted to continue living with Forney. The couple then made amends.

On December 21, 1984, Forney picked up his wife from her job. Forney was driving his specially equipped vehicle designed for a paraplegic. Forney does not have the use of any muscles below his arms due to a spinal injury. As Forney was driving away, he spotted Solo-

---

[1] The crime was committed on December 21, 1984. The defendant was indicted on January 2, 1985. A Baldwin County jury returned a verdict of guilty on January 23, 1985. A motion for new trial was made on February 21, 1985 and denied on July 11, 1985. Notice of appeal was filed on August 8, 1985, and the transcript was docketed on September 3, 1985. The case was submitted for decision without oral argument on October 18, 1985.

mon at a liquor store across the street. Forney pulled his van into the store's parking lot.

At this point testimony is disputed. According to Forney and his wife, Solomon and Forney argued about Solomon's relationship with his wife. Solomon then reached into the vehicle to grab Forney, who shot him twice with a pistol.

Witnesses for the prosecution testified they saw Solomon getting a drink from a vending machine when Forney suddenly wheeled his van into the parking lot. The State's witnesses claimed that Solomon turned and bent to see who was in the vehicle. However, they testified that Solomon did not speak and did not touch or reach into the vehicle.

A State Crime Laboratory expert testified at trial that the absence of gunpowder particles on Solomon's shirt indicated the muzzle of the gun was more than five feet from the victim when fired.

1. During voir dire, the trial judge asked potential jurors whether any had physical ailments, such as diabetes or heart problems, that might hinder their ability to serve. Juror Napoleon Clemons did not respond. After the trial had begun, Clemons had to be removed and hospitalized due to complications from diabetes and high blood pressure, for which he had been taking medication.

Forney contends the trial court erred by excusing Clemons and replacing him with an alternate juror. He claims the juror did not truthfully respond to a "material" question and prejudiced Forney's right to fair jury selection.

We find that the trial court acted properly in replacing the ill juror with the first alternate, pursuant to OCGA § 15-12-172. Further, Forney has not shown how he was prejudiced by the use of an alternate, since pursuant to OCGA § 15-12-169 alternates are selected in the same manner and must have the same qualifications as members impaneled as the jury.

"The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." *Whitlock v. State*, 230 Ga. 700 (5) (198 SE2d 865) (1973). Juror Clemons' failure to respond to the judge's question because "I was feeling good yesterday" did not relate to a juror's ability to serve on a jury impartially and without bias as to prejudice Forney's chances for a fair trial.

2. Forney contends the trial court erred in allowing the State to call witness Karen Brown to testify in rebuttal when her name was not on a list of witnesses given by the State to the defense.

Forney points to OCGA § 17-7-110, which prohibits calling wit-

nesses whose names do not appear on a list furnished to the defendant unless the prosecuting attorney states in his place that the evidence is newly discovered. However, this court has repeatedly ruled that calling an unlisted witness in rebuttal is not error and does not violate § 17-7-110. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982); *Mize v. State*, 240 Ga. 197 (240 SE2d 11) (1977).

3. During the prosecutor's closing argument, the victim's wife cried openly in the courtroom. The judge had her escorted from the court and instructed the jury not to allow the emotion shown to affect their decision. Forney claims the trial court erred in denying his motion for mistrial because of the prolonged crying.

" 'Many, if not most, trials by jury involve some degree of emotion by at least one party or the other. It would be unreasonable to expect that all emotions be completely frozen during a trial by jury when such effective bridle on emotions cannot be sustained elsewhere.' " *Dick v. State*, 246 Ga. 697, 705 (273 SE2d 124) (1980), quoting *Associated Distributors, Inc. v. Strozier*, 144 Ga. App. 205, 206 (240 SE2d 761) (1977). Demonstrations and outbursts which occur during the course of a trial are matters for the trial court's discretion. *Dick* at 705. We find no abuse of the trial court's discretion in Forney's case.

4. During the closing argument, the prosecutor argued that two of the State's witnesses were credible because they had not been impeached with prior inconsistent statements. As to witnesses Bertha Ingram and Brenda Stephens, the assistant district attorney stated: "Did you notice this? A lot of times when you try a case against defense counsel . . . [t]hey'll try to introduce what's called prior inconsistent statements. In other words, when I get Bertha and Brenda on the witness stand and I'm examining them, they'll go through — they'll go through on cross examination, they'll pull out pages of transcripts and, you know, Miss Bertha, didn't you say something — remember you testified at this hearing on this date."

Neither of the two witnesses had appeared at prior hearings or issued statements to police or counsel. Forney argues that the prosecutor, by his comments, was supplying facts not based on any evidence in the record and arguing his personal belief as to the truthfulness of the witnesses. He claims the trial court erred in allowing the argument and not granting a mistrial.

The refusal to grant a mistrial based on alleged improper remarks is within the discretion of the trial court, OCGA § 17-8-75, and will not be interfered with on appeal unless there is manifest abuse. See *Harrell v. State*, 253 Ga. 474, 476 (321 SE2d 739) (1984).

In Forney's case, the trial judge did not abuse his discretion. After learning that there were in fact no prior inconsistent statements, the judge determined that the assistant district attorney was merely

illustrating one manner in which testimony could be impeached, and allowed the prosecutor to use the illustration to point out that the testimony of neither Ingram nor Stephens had been impeached and that they were credible witnesses.

5. Forney contends the trial court erred in its charge to the jury that "a spouse is never justified in taking the life of another who is the illicit or adulterous lover of his or her spouse to prevent adultery and nothing more than that appearing, the killing would be murder." Forney claims the charge was not adjusted to the facts of this case because Solomon was not found in a compromising sexual setting with Forney's wife. See *Burger v. State*, 238 Ga. 171, 172 (231 SE2d 769) (1977).

However, we find the charge was based on a correct proposition of law, *Burger*, supra, and was adjusted to the facts of Forney's case. The evidence demonstrated that Forney was angered over an alleged affair Solomon was having with his wife. Because evidence was presented indicating that Forney shot Solomon to prevent him from engaging in any further sexual relations with his wife, the trial court properly charged the law as established in *Burger*.

6. Forney contends the trial court erred in failing to give two jury charges he requested that are associated with his claim of self defense. The requested charges would have the jury consider the effects of Forney's handicap and the physical discrepancy between Solomon and Forney in determining whether Forney would have been able to defend himself from Solomon's aggression without a weapon.

Although the trial judge did not give Forney's requested charges, the court charged extensively on self defense and justifiable homicide. In the charge, the trial court stated: "I charge you that a person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such others' imminent use of force." The court also charged that a person is justified in using force which is intended or likely to cause death or great bodily injury if he reasonably believes such force is necessary to prevent similar harm to himself. " '(I)t is no longer necessary to give the exact language of requests to charge when the same principles are fairly given to the jury in the general charge of the court.' " *Shirley v. State*, 245 Ga. 616, 619 (266 SE2d 218) (1980). Viewing the jury instructions as a whole, we find no error.

Forney also claims error in the trial court refusing to charge: ". . . that the law presumes the defendant's character to be good until the contrary is proven by credible evidence," based on *Bennett v. State*, 86 Ga. 401, 404 (12 SE 806) (1890).

The trial judge charged extensively on good character as a defense. Failure to charge on a presumption of good character where

there was evidence of good character furnished was harmless, if error at all.

7. After jury deliberations began, the foreman returned and asked the trial judge if four of the jurors could view the scene of the crime. After inquiry, the judge learned that eight of the jurors had already gone to the scene without the court's permission. The judge had not previously cautioned the jury not to visit the scene. To remedy the situation, the judge ordered the entire jury to be taken to the scene. The jury was instructed on the appropriate guidelines for jury conduct while viewing a crime scene. Neither the prosecutor nor the defense counsel objected to the order.

Forney contends that the trial judge erred in not granting a mistrial, even though no motion for mistrial was made. Forney claims the court also erred by allowing the jury to view the scene without a knowing and intelligent waiver of his right to be present.

We find the trial judge acted properly. The decision to allow a jury to view a scene is discretionary, see *Sutton v. State*, 237 Ga. 418, 419 (228 SE2d 815) (1976). Unlike past cases where unauthorized jury visits to the crime scene resulted in reversal, see *Bobo v. State*, 254 Ga. 146 (327 SE2d 208) (1985); *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976), the trial court here was able to appraise the situation before the conclusion of deliberations and devise a proper remedy, a visit supervised by the court.

In *Watkins*, supra, two jurors made an unauthorized visit to the scene of a crime during the course of the trial to gauge how much time it took to drive from there to the defendant's home. They then reported their findings to the entire jury. The juror misconduct was discovered after the verdict, and the defendant made a motion for new trial. The Court of Appeals reversed denial of the motion. In *Watkins*, the court was concerned that the two jurors "became, in a real sense, unsworn witnesses against the appellant in violation of the Sixth Amendment." *Watkins* at 684. However, in Forney's case, there is no evidence or danger of " 'the intentional gathering of extra judicial evidence, highly prejudicial to the accused, by members of the jury and the communication of that information to the other jurors in the closed jury room.' " *Chadwick v. State*, 164 Ga. App. 102, 103 (296 SE2d 398) (1982), quoting *Watkins* at 685. See also *Boles v. State*, 168 Ga. App. 904 (2) (310 SE2d 741) (1983).

The absence of the defendant at the jury view of a crime scene, when made for the purpose of better understanding the evidence and not introducing new evidence, is not a denial of due process. *Jordan v. State*, 247 Ga. 328 (9) (276 SE2d 224) (1981). See also *Snyder v. Massachusetts*, 291 U. S. 97 (54 SC 330, 78 LE 674) (1934) (due process rights not violated by jury view of crime scene in absence of the accused); and *Valdez v. United States*, 244 U. S. 432 (37 SC 725, 61

LE 1242) (1917) (6th Amendment right to confrontation not violated by jury view of crime scene in absence of the accused).

8. Although Forney did not enumerate as error insufficiency of the evidence, we find a review of all of the evidence adduced at trial in the light most favorable to the jury's verdict shows that a rational trier of fact could have found Forney guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1986.

*Gardner & Gardner, Milton F. Gardner, Sr., Thomas J. Phillips, Jr.,* for appellant.

*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.