### 43078. HULLENDER v. THE STATE.
(344 SE2d 207)

MARSHALL, Chief Justice.

The appellant, Joey Hullender, was convicted of the murder of Richard Moore, Jr. He was sentenced to life imprisonment. He appeals. We affirm.[1]

The appellant and his uncle, Clifford Hullender, were at the Cabaret Nightclub located on Highway #1 in Lyons, Georgia, during the late night hours of January 25, 1985, and early morning hours of January 26. The deceased was also at the nightclub. As the facility was closing at approximately 2:00 a.m., they all began to leave. On the way outside, the appellant stepped on the deceased's foot. An argument developed between the two of them in the parking lot. Eyewitnesses testified that a fight ensued, but that the fight was not serious. However, after several minutes, appellant brandished a small pocket knife. The victim had no weapon. As the appellant and the victim were fighting, they went between two parked vehicles. The appellant was seen walking away with his knife in his hand, and he left the scene. The victim collapsed. He died shortly thereafter as a result of the knife wound penetrating the heart.

After leaving the Cabaret, the appellant and his uncle went to a fast-food store. The appellant told several individuals there that as he was walking out of the Cabaret, he stepped on somebody's foot. As recounted by the appellant: He and the person on whose foot he stepped started arguing and got into a fight. They quit fighting and shook hands. Clifford Hullender testified that as the appellant turned around to walk back to his car, "the guy hit him from behind and that's when he stabbed him." However, the appellant had not sustained any injuries serious enough to warrant medical attention.

---

[1] The murder in this case occurred on January 26, 1985. The trial began on August 26, 1985. Sentence was imposed on August 30, 1985. No motion for new trial was filed. The notice of appeal was filed on September 27, 1985. The transcript was docketed in this court on January 3, 1986, and a supplemental transcript was docketed on January 15, 1986. Oral argument was held on April 22, 1986.

Although the appellant did not testify at trial, an out-of-court statement he had given to the Georgia Bureau of Investigation was admitted in evidence. In this statement, the appellant maintained that: As he was leaving the Cabaret, the deceased pushed him and started "cussing at" him. An elderly lady at the door took him by the arm and told him to forget about it. He went outside, and the deceased was there. The deceased attacked him, and although he "started explaining to him that [he] didn't want to fight," the deceased continued to hit him. He eventually took his knife out of his pocket. "I thought that if I showed my knife, he might leave me alone. I held the knife out in front of me and he ran at me swinging his fist and the knife stuck in him . . . I walked off and got in my car and me and Clifford left."

The elderly lady at the door of the Cabaret, to whom the appellant referred in his out-of-court statement, is Ms. Juanita Harrison. Ms. Harrison is "an elderly woman in her eighties [who] had recently suffered from two massive heart attacks." Several days prior to trial, the prosecuting attorney agreed to "work with" and "cooperate with" defense counsel toward having her testimony taken in the form of a videotaped deposition.

Defense counsel announced ready for trial on Monday morning, August 26. However, this announcement of ready was qualified with the statement to the court that the defense would be ready to proceed subject to the completion of the deposition of Ms. Harrison. There was no objection by the state. Voir dire examination of prospective jurors continued throughout Monday, August 26. After a jury was struck, the jurors were instructed to return Wednesday, when the evidentiary phase of the trial would begin.

At the outset of the voir dire phase of the trial, defense counsel objected to the presence of the deceased's father at the prosecutor's table during jury selection. "Out of an abundance of caution," the trial judge sustained this objection.

When jury selection was completed on Monday and the court adjourned for the day, defense counsel approached the prosecuting attorney in regard to rescheduling Ms. Harrison's deposition for the following day, Tuesday, August 27. At that time, the prosecuting attorney informed defense counsel that he planned to be in Lyons, Georgia, at the Toombs County Courthouse on the following day, and he further indicated that he would be withdrawing his cooperation with respect to the videotaped deposition of Ms. Harrison. The reason for this was defense counsel's objection to the deceased's father's sitting at the prosecutor's table during voir dire examination.

On Tuesday, August 27, defense counsel attempted to contact the prosecuting attorney concerning Ms. Harrison's videotaped deposition. Defense counsel eventually left a message at the prosecuting at-

torney's office, notifying him of the time and place of the deposition. The prosecuting attorney testified that he received this message approximately 20 minutes before the deposition, which did not give him sufficient time to appear at the deposition. Ms. Harrison's deposition was taken nonetheless.

At the outset of the second day of the trial (Wednesday, August 28), defense counsel sought to have this videotaped deposition admitted in evidence. In proffering Ms. Harrison's deposition testimony at trial, defense counsel stated that he expected her testimony to show: On the night of the deceased's death, she was working at the door of the Cabaret club. She knew neither the deceased nor the appellant personally; nor did she hear any outbreaks or comments from either of them. However, she did grab an individual later identified as the appellant, and she told him to remain at the door until all other persons had exited the club. He did this.

Defense counsel stated, in essence, that this testimony was material, because it would show that the deceased exited the club first, and he waited for the appellant outside the club. The prosecuting attorney agreed to stipulate that Ms. Harrison would testify to this.

However, defense counsel stated that, if the trial court would not admit the videotaped deposition of Ms. Harrison, the defense would no longer be ready for trial and would move for a continuance. The trial court denied the continuance on the ground that the criteria set out in OCGA § 17-8-25 had not been met. See Division 2, infra.

When court convened the following day (Thursday, August 29), defense counsel stated that he had subpoenaed Ms. Harrison but that she had informed defense counsel that she would not come to court. The trial judge responded, "Now, I don't intend to have Ms. Juanita Harrison thwart the processes of the court. If you insist that she be brought here, I'll have the sheriff pick her up and bring her here. But I don't want to hear on appeal any problem about Ms. Juanita Harrison." Defense counsel later stated that "[w]e will go with your ruling yesterday."

1. In the first enumeration of error, the appellant argues that the trial court erred in refusing to allow the testimony of Ms. Juanita Harrison to be admitted in the form of the videotaped deposition.

(a) In arguing that the videotaped deposition of this witness should have been admitted in evidence by the trial judge, the appellant relies on various sections of the Civil Practice Act. OCGA § 9-11-1 et seq. The appellant cites § 9-11-32 (a) (3) (C), which allows the deposition of a witness to be used by any party for any purpose if "the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment." Section 9-11-32 (a) qualifies this by providing that the party against whom the deposition is to be used must have been "present or represented at the taking of the deposition or

. . . had reasonable notice thereof." The appellant also cites § 9-11-29 (1), which allows the parties to "[p]rovide that depositions may be taken before any person, at any time or place, upon any notice, and in any manner and, when so taken, may be used like other depositions."

(b) However, as argued by the state, the Civil Practice Act applies, not in criminal cases, but rather "in all actions of a civil nature." OCGA § 9-11-1. See *Brown v. State*, 238 Ga. 98 (231 SE2d 65) (1976). The taking of depositions in criminal cases is governed by OCGA Title 24, Ch. 10, Art. 7. OCGA § 24-10-130 et seq. See Ga. Crim. Trial Prac. (1985 ed.), § 14-15. In order for the taking of a deposition in a criminal case to be authorized, a motion must be filed with a court, a court order must be obtained, and it must appear "to the satisfaction of the court that the witness is in imminent danger of death or that the witness has been threatened with death or great bodily harm because of the witness' status as a potential witness in any criminal trial or proceeding." OCGA § 24-10-130. Section 24-10-131 requires "[t]he party at whose instance a deposition is to be taken" to give to "every party reasonable written notice of the time and place for taking the deposition." Under § 24-10-135, generally a deposition may be used at trial only if the witness is dead; however, "[a]ny deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness."

(c) Here, no motion was filed, no court order was obtained, no written notice was given, and at the time of the trial the witness was alive. In addition, although Ms. Harrison's physician did testify that he had given her permission not to appear for jury duty because "prolonged courtroom activity would be detrimental to her physical condition," this testimony did not establish that she would be in "imminent danger of death" if she appeared in court to testify as a witness.

Nonetheless, the appellant argues that a binding contractual agreement was formed between the prosecution and the defense with respect to the taking of this witness' deposition. In the alternative, the appellant argues that since defense counsel reasonably relied on the prosecuting attorney's agreement to "work with" and "cooperate with" defense counsel in the videotaping of Ms. Harrison's deposition, the prosecution became estopped to withdraw its agreement.

Under the previously cited statutory provisions, this deposition clearly was not admissible at the appellant's trial. As we read the record, the prosecuting attorney's agreement to cooperate with defense counsel in the videotaping of this deposition did not constitute an agreement or stipulation that the deposition could be admitted at trial. Cf. *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). We hold in Division 2, infra, that, under the facts of this case, the witness' testimony was not material. Consequently, we cannot say that

the trial court erred in refusing to admit the deposition.

However, we certainly do not countenance the action of the prosecuting attorney in withdrawing his agreement to cooperate in the taking of the deposition because of an adverse ruling by the trial court on an unrelated matter. Had the prosecuting attorney's agreement to cooperate in the taking of the deposition constituted a stipulation that the deposition would be admissible at trial notwithstanding the fact that the deponent might be available to testify, and had the witness' testimony been material, the prosecuting attorney's withdrawal of his agreement would have given rise to reversible error as a result of the trial court's refusal to admit the deposition in evidence.

2. In the second enumeration of error, the appellant argues that the trial court abused its discretion in refusing to grant a continuance in order to give the appellant an opportunity to secure Ms. Harrison's testimony.

OCGA § 17-8-25 sets out the criteria which must be met in order to obtain the grant of a continuance upon the ground of the absence of a witness in a criminal case. This section provides: "In all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpoenaed; that he does not reside more than 100 miles from the place of trial by the nearest practical route; that his testimony is material; that the witness is not absent by the permission, directly or indirectly, of the applicant; that the applicant expects he will be able to procure the testimony of the witness at the next term of court; that the application is not made for the purpose of delay but to enable the applicant to procure the testimony of the absent witness; and the application must state the facts expected to be proved by the absent witness." See, e.g., *Brown v. State*, 169 Ga. App. 520 (313 SE2d 777) (1984).

Here, the trial court offered to have the appellant's subpoena of Ms. Harrison served on her and to have her haled into court. The appellant declined this offer. Thus, it cannot be said "that the witness [was] not absent by the permission, directly or indirectly, of the applicant."

In addition, the appellant argues that the purpose of Ms. Harrison's testimony was to show that the deceased was the first aggressor in the fight resulting in his death. Under the evidence adduced by the state at trial, the question of whether the deceased or the appellant was the first one to exit the club and enter the parking lot was not a material issue. The state's evidence showed that as the fight progressed, neither party inflicted serious injuries on the other until the appellant stabbed the deceased, who was unarmed. Thus, under unrefuted state's evidence, Ms. Harrison simply was not a material witness.

3. In the third enumeration of error, the appellant argues that the superior court abused its discretion in refusing to grant the appellant's request for a sequestered, individual voir dire examination of certain prospective jurors concerning their partiality to the victim.

During the prosecution's voir dire examination of prospective jurors, several jurors expressed doubts concerning their ability to be impartial in this case because of their friendship with the deceased or his family. Defense counsel requested that the defense be allowed to conduct its examination of these prospective jurors individually and outside of the presence of each other. The trial court denied this request.

Defense counsel argues that in questioning individual, prospective jurors in the presence of the entire panel in regard to how their relationships with the deceased and/or his family would affect their ability to be impartial in this case, the result was "an extended eulogy for the deceased" which "create[d] an atmosphere of sympathy for the deceased [such] that [it] would be impossible for the appellant [to] present a defense strong enough to rebut." Upon reviewing the transcript of defense counsel's voir dire examination of these prospective jurors, we emphatically disagree. This question-and-answer process can in no way be described as an "extended eulogy for the deceased."

We find no abuse of discretion on the part of the trial court in denying the appellant's request for sequestered voir dire in this case. E.g., *Curry v. State*, 255 Ga. 215 (2a) (336 SE2d 762) (1985); *Green v. State*, 246 Ga. 598 (3) (272 SE2d 475) (1980).

4. In the fourth enumeration of error, the appellant argues that the trial court erred in denying his motion for directed verdict of acquittal on the murder charge.

The appellant argues here that the evidence was insufficient to support the state's contention that the appellant killed the victim intentionally and with malice aforethought. We disagree. "[A] review of all of the evidence adduced at trial in the light most favorable to the jury's verdict shows that a rational trier of fact could have found [the appellant] guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Forney v. State*, 255 Ga. 316, 321 (8) (338 SE2d 252) (1986).

5. In this case, the appellant has filed a supplemental brief containing nine enumerations of error not stated as a separate part of, and incorporated in, his original brief. We are unable to consider these enumerations of error inasmuch as they are untimely.

This case was originally docketed on January 3, 1986. Georgia Supreme Court Rule 39 (252 Ga. A-8) requires the appellant's brief to be filed within 20 days after the case is docketed; "[e]numerations of error shall be stated as a separate part of, and shall be incorporated

in, the brief." The appellant was granted an extension of time for the filing of his brief and enumerations of error until February 24, 1986. On March 31, 1986, he filed the supplemental brief containing the additional enumerations of error. Consequently, these enumerations of error are untimely and will not be considered. *Trenor v. State*, 252 Ga. 264 (8) (313 SE2d 482) (1984); *Parham v. State*, 166 Ga. App. 855 (2) (305 SE2d 599) (1983); *MacDonald v. MacDonald*, 156 Ga. App. 565 (2) (275 SE2d 142) (1980) and cits.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 29, 1986 —
RECONSIDERATION DENIED JUNE 25, 1986.

*Daniel, Batcheller & Hunt, Stephanie J. Batcheller, William M. Phillips*, for appellant.

*Richard A. Malone*, District Attorney, *William H. McClain*, Assistant District Attorney, *Michael J. Bowers*, Attorney General, *Eddie Snelling, Jr.*, Staff Assistant Attorney General, for appellee.