## S95A1906. SIMS v. THE STATE.
### (467 SE2d 574)

THOMPSON, Justice.

Tyree Marcus Sims and Maurice Shuntey Mance were jointly charged in a multi-count indictment in connection with the shooting death of Bobby Ingram, a taxicab driver. Mance entered guilty pleas to malice murder, theft, and possession of a firearm, and he testified at trial against Sims. Sims was convicted by a jury of felony murder (predicated on armed robbery and aggravated assault), and possession of a firearm during the commission of a crime.[1] He appeals from the judgment of conviction and from the denial of his motion for new trial.

Viewed in favor of the verdict, the evidence showed that Ingram was sent by his dispatcher at 4:00 a.m. to pick up a passenger who asked to be taken to a location on Collins Circle. At about 5:30 a.m., Ingram's taxicab was observed parked at the Collins Circle location. He was found slumped over in the driver's seat with a gunshot wound to his head, which resulted in his death.

Earlier on the night of the shooting, Sims and Mance had a discussion with a mutual friend. Mance stated his intention to rob somebody, telling the friend: "Probably I ought to rob a cab driver." Both Sims and Mance agreed with the friend's response that they would probably have to kill their victim so they could not be identified. Sometime after the shooting, Sims revealed to another friend that he was with Mance when Mance shot and killed a taxicab driver. A third friend testified that Mance told her in Sims' presence that "we killed the [driver]."

Mance testified that he and Sims were out together on the night of the shooting. Sims suggested that Mance call for a taxi because "he wanted to rob it." Sims had a gun in his possession, but gave it to

---

[1] The crimes occurred on October 3, 1993. Sims was indicted on May 4, 1994. Trial commenced on July 11, 1994, and a verdict was returned on July 15, 1994. Sims was sentenced on the same day to life imprisonment for felony murder and to a consecutive term of five years for the firearm possession conviction. A motion for new trial was filed on August 15, 1994, and amended on January 24, 1995. The motion, as amended, was denied on May 30, 1995. A notice of appeal was filed on June 12, 1995. The case was docketed in this Court on August 23, 1995; oral argument was heard on November 13, 1995.

Mance and told him to "do it" because Mance was 16 years old. While waiting for the taxi to arrive Sims told Mance, "[w]e might have to kill him because he can probably identify us." The taxi arrived and the two were taken to their stated destination. Mance then pulled out the gun, pointed it to the driver's head, and shot him. Sims instructed him to get the driver's money. Mance took $36 and some lottery tickets from the victim's pocket.

1. The evidence, viewed in a light most favorable to the verdict, was sufficient to enable a rational trier of fact to find Sims guilty beyond a reasonable doubt of felony murder and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Sims asserts that the trial court impermissibly expressed an opinion concerning the evidence in violation of OCGA § 17-8-57, when, during the course of a jury instruction on the law applicable to the uncorroborated testimony of an accomplice, the court referred to Mance as an accomplice. See *Ladson v. State*, 248 Ga. 470 (11) (285 SE2d 508) (1981) (such an instruction would constitute an expression of opinion by the court as to the guilt of the accused because it is tantamount to a charge that the defendant, as a matter of law, was a participant in the criminal enterprise).

Sims made no specific objection to this aspect of the charge, but only generally reserved his right to later object to the jury instructions. However, a general reservation of the right to object to a jury charge likewise preserves for review an alleged OCGA § 17-8-57 violation, which occurs during the charge.[2] *Gaither v. State*, 234 Ga. 465 (216 SE2d 324) (1975). To the extent that *Butts v. State*, 198 Ga. App. 368 (2) (401 SE2d 763) (1991); *Payne v. State*, 207 Ga. App. 312 (3) (428 SE2d 103) (1993), and any subsequent cases are inconsistent with the controlling authority of *Gaither*, supra, they are expressly overruled.

As for the merits of this claim, we find no harmful error. The trial court followed with a complete and correct instruction on corroboration of an accomplice's testimony, and apparently recognizing its previous misstatement, sua sponte concluded with:

> Whether or not any witness in this case was an accomplice . . . is a question for you, the Jury, to determine from the evidence in this case. And I will make note that in the beginning of that introduction to that charge I mentioned that there was an accomplice here. That is not a finding by me,

---

[2] An objection based on a violation of OCGA § 17-8-57 at any other point in the trial is not reached on appeal unless a timely objection and/or motion for mistrial is made. *Driggers v. State*, 244 Ga. 160 (2) (259 SE2d 133) (1979).

that is an issue you too must find . . . it is your duty to determine whether, indeed, Mr. Mance was an accomplice.

The timely curative instruction amply cured the error and negated any reasonable probability that the erroneous statement of law prejudiced the defendant. See generally *Allen v. State*, 259 Ga. 303 (2) (379 SE2d 513) (1989).

3. Sims asserts that he is entitled to a new trial based on purported juror misconduct. This allegation is predicated on information that during a recess in the trial two spectators overheard several jurors discussing the case in contravention of the trial court's instructions.

Evidence presented at a hearing on the motion for new trial established the following: The defendant's father testified that during a recess he overheard one juror state to another, "I don't know how to present this case, all I know is guilty or not guilty." The second juror did not respond. Defendant's father did not report this conversation to the trial court, and he was not certain whether he told defense counsel. He did, however, report it to a spectator in the courtroom. That man testified at the hearing on the motion for new trial that he too overheard three female jurors discussing the case during a recess at trial. One juror stated, "I can't read his mind, I don't know what went on. . . ." He observed the same three jurors several minutes later, and heard one comment, "if I didn't know that somebody was going to do something that I'm not responsible, and I shouldn't have to bear responsibilities for it." The spectator did not report the incidents to defense counsel. Sometime after the verdict he reported his observations in a letter to the court. Defendant's trial counsel testified that he had no knowledge of the allegations of juror misconduct until after the verdict was received.

" 'There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred.' [Cit.]" *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990). However, a jury verdict will not be upset solely because of such conduct, unless "the statements are so prejudicial that the verdict must be deemed 'inherently lacking in due process.' [Cit.]" *Bobo v. State*, 254 Ga. 146 (327 SE2d 208) (1985). Our inquiry then must be directed to whether this error is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injury. See *Smith v. State*, 218 Ga. 216 (2) (c) (3) (126 SE2d 789) (1962).

"[W]here the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant." *Jones v. State*, 258 Ga. 96, 97

(366 SE2d 144) (1988). This is such a case. The jurors' statements to one another did not involve extrajudicial information, or demonstrate that they were deliberating the case prior to the close of evidence, or that one juror was attempting to persuade another on any issue or testimony in the case. While the violation of the court's instructions was clearly erroneous, the error was not so prejudicial as to have contributed to the conviction. See *Boles v. State*, 168 Ga. App. 904 (310 SE2d 741) (1983). We are satisfied that the juror's actions were harmless beyond a reasonable doubt.

4. Sims claims he was denied effective assistance of trial counsel because of the failure to assert a special plea of mental incompetency to stand trial under OCGA § 17-7-130.

Trial counsel testified at the hearing on the motion for new trial that he believed there was no legitimate basis to file such a special plea. The trial transcript reveals that when the case was called for trial on Monday morning, defense counsel informed the court that he was not ready to proceed. He explained that Sims had attempted suicide two weeks earlier, and had been hospitalized at Milledgeville. He was returned to the Hall County detention center on Friday afternoon and counsel met with him on Saturday. Counsel observed at that time that Sims was experiencing tremors and had difficulty communicating; he learned that Sims was receiving a combination of psychiatric drugs. As a result, counsel subpoenaed Sims' treatment and medication records, and requested the opportunity for a psychiatric evaluation concerning his competency to stand trial. Sims was evaluated by a psychiatrist who modified his medication and determined that he was competent to stand trial.

At the hearing on the motion for new trial, trial counsel testified that after receiving the psychiatrist's evaluation and discussing the matter further with the physician and with Sims, he believed there existed no grounds to file a special plea of mental incompetency under OCGA § 17-7-130. The court correctly concluded that trial counsel's representation satisfied the standard of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 1996.

*David S. West, Bruce S. Harvey,* for appellant.

*Lydia J. Sartain, District Attorney, Leonard C. Parks, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige R. Whitaker,* for appellee.