A98A1523. SATTERWHITE v. THE STATE.
(509 SE2d 97)

RUFFIN, Judge.

A jury found Wendall Satterwhite guilty of rape, kidnapping, and aggravated assault, and his conviction was affirmed on appeal. *Satterwhite v. State*, 212 Ga. App. 543 (442 SE2d 5) (1994). In 1996, Satterwhite filed an extraordinary motion for new trial pursuant to OCGA § 5-5-41, arguing that juror misconduct contributed to the guilty verdict. The trial court denied the motion, and we granted Satterwhite's application for discretionary review. In his sole enumeration of error, Satterwhite asserts the trial court erred in failing to grant his motion for new trial given the evidence of juror misconduct. For reasons which follow, we affirm.

Satterwhite was convicted in November 1992. Immediately following the trial, the prosecutor and defense attorney questioned jury foreman David Flynn regarding his reasoning in issuing a guilty verdict. Flynn told both attorneys that "if [Satterwhite] hadn't taken the stand himself and been caught in lies" he would have "let him go." Flynn mentioned nothing about juror misconduct at this time.

While traveling in California in 1996, Flynn watched a television show about a trial in which a juror wanted to go to the scene of the crime, but was advised that such conduct was improper. This show prompted an epiphany for Flynn regarding alleged juror misconduct that occurred during jury deliberations back in 1992, and Flynn contacted Satterwhite's attorney to report this misconduct. Following

Flynn's call, Satterwhite filed his extraordinary motion for new trial on October 23, 1996. At the hearing on the motion, Flynn testified that, during the trial, the jury had not reached a verdict at the end of a day of deliberation. After instructing the jury not to discuss the case with anyone, the judge sent the jury home. According to Flynn, when the jury reconvened, a female juror mentioned that she had discussed the case with her husband the night before. This juror relayed the conversation she had with her husband regarding the effects of crack cocaine and, based on her newly-gained knowledge, answered questions posed by other jurors. Flynn also testified that a male juror said he had visited the crime scene and that "it looked like it could have happened like [the victim testified]." Flynn said these two statements caused him to change his vote from innocent to guilty. When questioned about other evidence supporting Satterwhite's conviction, Flynn could not recall all of the victim's testimony. He also said he could not remember the "lies" Satterwhite told, if any.

Based on the evidence adduced at the hearing, the trial court found that the jurors' statements amounted to juror misconduct, but denied Satterwhite's motion for new trial because the misconduct was not highly prejudicial and was harmless beyond a reasonable doubt.

The rule that jurors cannot impeach their own verdict is deeply rooted in Georgia law. *Watkins v. State*, 237 Ga. 678, 683 (229 SE2d 465) (1976). This rule promotes "the need to keep inviolate the sanctity of juror deliberations, the desirability of promoting the finality of jury verdicts and the necessity of protecting jurors from post-trial harassment." Id. at 683-684. But there are constitutional limitations to this general principle. This rule is inapplicable where jurors intentionally gather extra-judicial evidence that is highly prejudicial to the accused and communicate that information to the other jurors in a closed jury room. *Boles v. State*, 168 Ga. App. 904, 907 (2) (310 SE2d 741) (1983). Under these circumstances, the juror making such statements essentially becomes an unsworn witness against the defendant in violation of the Sixth Amendment. Id. Even so, "[a] jury verdict will not be upset solely because of such statements unless the statements are so prejudicial that the verdict must be deemed inherently lacking in due process. Put another way, a new trial will not be granted unless there is a reasonable possibility that the improper evidence collected by jurors contributed to the conviction." (Citations and punctuation omitted.) *Bobo v. State*, 254 Ga. 146 (1) (327 SE2d 208) (1985).

The trial court concluded that juror misconduct did occur during jury deliberations in 1992. Since neither of the jurors who allegedly engaged in this misconduct was called to testify at the hearing, the substance of their statements (i.e., that they had visited the crime

scene and discussed the case with others) constitutes hearsay and cannot be used to prove that they actually undertook these actions. See *Shaver v. State*, 199 Ga. App. 428, 429 (1) (405 SE2d 281) (1991) (hearsay evidence, even if admitted without objection, has no probative value). However, the trial court apparently found that the jurors' statements themselves constituted juror misconduct. Since the communication of information purportedly obtained through extra-judicial acts can be as prejudicial as the extra-judicial acts themselves, we will not disturb this finding on appeal. However, we note that "[e]xtra-record statements made by a juror concerning the defendant during the course of jury trial are not presumptively so prejudicial as to infect the verdict and require that the defendant be given a new trial." *Bobo*, 254 Ga. at 146.

Given the evidence of juror misconduct, the issue is whether the misconduct was so prejudicial that the verdict must be deemed inherently lacking in due process. See *Bobo*, supra. Flynn's testimony that his vote was changed by the statements of the other jurors suggests that Satterwhite, like Bobo, was prejudiced by the misconduct. However, there are marked distinctions between this case and *Bobo*.

In *Bobo*, the allegations of juror misconduct surfaced shortly after the trial and were not the basis for an extraordinary motion for new trial. Id. at 146-147. At a post-trial hearing, the two jurors who engaged in the misconduct testified that they had gone to the crime scene to verify that the evidence presented by the prosecution was credible. Id. at 147. One of these jurors admitted she told her fellow jurors about her extra-judicial evidence-gathering for the purpose of persuading them to vote for conviction. Two other jurors who did not engage in misconduct also testified. These jurors established that the extra-judicial evidence did prejudice the defendant. Given the evidence that jurors "affirmatively sought to sway their fellow jurors' votes by relating personal observations and opinions concerning facts and circumstances surrounding the crime which were critical to determining the credibility of the sole eyewitness' identification," the Supreme Court concluded the misconduct required a reversal. Id. at 148.

In the instant case, four years had passed between the verdict and Flynn's realization that there had been juror misconduct during jury deliberations. In view of this time lapse, Flynn conceded his inability to recall all of the evidence properly presented to the jury. Therefore, his testimony in 1996 regarding how he reached a verdict in 1992 is questionable. Moreover, since Flynn was the only juror to testify at the hearing on Satterwhite's extraordinary motion, no other jurors corroborated his contentions regarding either the alleged misconduct or the impact the misconduct had on the jury. Furthermore, Flynn's testimony regarding how he reached a decision was

inconsistent. In 1992, he attributed his guilty vote to "lies" Satterwhite told on the stand. In 1996, however, he could not recall "all of [the lies] if there were any."

Flynn admitted his recollection of events was much better in 1992 than it was in 1996. The trial court chose to believe Flynn's 1992 statement that he based his verdict on lies Satterwhite told rather than on any juror misconduct. Therefore, the trial court concluded Satterwhite had not been prejudiced by juror misconduct and denied Satterwhite's extraordinary motion for new trial. "When the trial judge passes upon the grounds of an extraordinary motion for new trial he occupies the position of a trier of fact, and his discretion in refusing the motion will not be disturbed unless manifestly abused." *Chester v. State*, 172 Ga. App. 394 (1) (323 SE2d 248) (1984). Under these circumstances, the trial court did not abuse its discretion.

We note that the public policy considerations underlying the rule that jurors cannot impeach their own verdict support this result. To allow a lone juror who has had a change of heart to overturn a verdict four years after the fact invites defendants to approach jurors months or even years after a guilty verdict has been rendered in an attempt to gain evidence to support an extraordinary motion for new trial. If Flynn had come forward with his allegations of juror misconduct shortly after the trial, it may have required a different result. However, we do not wish to encourage jurors to second-guess their decision-making long after a verdict has been rendered, as this would undermine the finality of verdicts. See *Watkins v. State*, supra.

*Judgment affirmed. Pope, P. J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED NOVEMBER 9, 1998 — RECONSIDERATION DENIED DECEMBER 7, 1998 

*Word & Simmons, Gerald P. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.