## A05A0985. GAINES v. THE STATE.
### (618 SE2d 197)

ELLINGTON, Judge.

A Tift County jury found Rodney Gaines guilty beyond a reasonable doubt of aggravated assault, OCGA § 16-5-21 (a) (2) (with a deadly weapon). Following the denial of his motion for a new trial, Gaines appeals, contending that juror misconduct denied him a fair trial. For the following reasons, we reverse.

In his motion for a new trial, Gaines alleged that during voir dire one of the jurors falsely denied knowing Gaines and then during deliberations told other jurors that she knew him and gave her very negative opinion of his character. When a party moves for a new trial based on alleged juror misconduct, "[w]hether juror misconduct occurred is a question of fact for the trial judge. Indeed, motions for new trial because of improper conduct of jurors . . . are addressed to the sound discretion of the trial judge. Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination." (Punctuation and footnotes omitted.) *Goldsby v. State*, 273 Ga. App. 523, 533 (9) (615 SE2d 592) (2005).

The record shows the following facts. During voir dire, the prosecutor asked the panel if anyone knew Gaines. Only one prospective juror, a man, responded that he did. During the hearing on Gaines' motion for new trial, a juror ("E. W.") testified that during the jury's deliberations, before he had decided how he was going to vote, another juror ("E. S.") said, "I know that man [Gaines], he's a mean man, and that other man [the victim] is lucky to be alive." E. W. testified that at that point he voted guilty, based on weaknesses in the State's evidence and based on E. S.'s jury room statement, and the

jury reached a unanimous guilty verdict. Gaines opted not to call E. S. at the hearing on his motion for new trial, and E. W.'s testimony that E. S. made such a statement was undisputed.

Another juror ("D. M.") testified that during deliberations a female African-American juror whom he could not identify by name said that she knew of Gaines and that he has "always been a bad egg," or words to that effect. From the juror's statement, D. M. inferred that Gaines was "criminally minded," "a gun toting thug life living person," and the type of person who would commit the crime charged. D. M. testified that the juror's statement biased him against Gaines. Two female African-American jurors served, including E. S. Again, Gaines opted not to call E. S. or the other African-American female juror at the hearing on his motion for new trial, and D. M.'s testimony that such a statement was made is undisputed.

In addition, D. M. specifically recalled that the juror who made the statement in the jury room had, during voir dire, denied knowing Gaines. Because the record shows that during voir dire no female juror acknowledged knowing Gaines, and because neither of the African-American female jurors testified at the hearing on his motion for new trial, D. M.'s testimony on this point is also undisputed.

Gaines contends E. S.'s failure to disclose that she knew Gaines deprived him of the opportunity to move to excuse her for cause.[1] In addition, Gaines contends his Sixth Amendment right to confrontation was violated when extra-judicial evidence was introduced into the jury's deliberations.

1. The Georgia Code reflects the venerable common law rule prohibiting jurors from impeaching their verdict. See OCGA § 17-9-41 ("The affidavits of jurors may be taken to sustain but not to impeach their verdict."). As the Supreme Court of Georgia has explained,

> [t]he provisions of this Code section were taken from prior decisions of this court and this rule of common law origin (that jurors cannot impeach their own verdict) is rooted deeply in Georgia law. There are a number of important public policy considerations underlying the rule which prove

---

[1] See OCGA §§ 15-12-133 ("In all criminal cases both the state and the defendant shall have the right to an individual examination of each juror from which the jury is to be selected prior to interposing a challenge. . . . In the examination, the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action or the counsel or parties thereto."); 15-12-164 (excusing jurors for cause based on partiality).

its sagacity. Among these considerations are: the need to keep inviolate the sanctity of juror deliberations, the desirability of promoting the finality of jury verdicts and the necessity of protecting jurors from post-trial harassment.... [T]here are constitutional limitations[, however] which must be recognized to preserve the fundamental concept of a fair trial.

*Watkins v. State*, 237 Ga. 678, 683-684 (229 SE2d 465) (1976). In *Watkins v. State*, the defendant presented evidence of "the intentional gathering of extrajudicial evidence, highly prejudicial to the accused, by members of the jury and the communication of that information to the other jurors in the closed jury room." Id. at 685. Specifically, eight jurors gave evidence under oath that after the jury began deliberating two jurors measured the time it took to drive from the crime scene to the defendant's house, a fact not explained at trial, and told the others their findings. Id. at 683. The Supreme Court concluded "the two jurors . . . who made an unauthorized visit to the scene of the crime and then presented their findings to the other members of the jury in the jury room became, in a real sense, unsworn witnesses against the appellant in violation of the Sixth Amendment." (Citations omitted.) Id. at 684. The rule against jurors impeaching their verdicts had to yield to the defendant's constitutional right to have a trial by an impartial jury and to confront the witnesses against him. Id. at 685.

The Supreme Court of Georgia later clarified that reversal of a conviction is not automatically demanded whenever a juror makes statements concerning the defendant during the course of jury deliberations and held "we will not allow a jury verdict to be upset solely because of such statements unless the statements are so prejudicial that the verdict must be deemed inherently lacking in due process." (Citation and punctuation omitted.) *Williams v. State*, 252 Ga. 7, 9 (1) (310 SE2d 528) (1984). "Put another way, a new trial will not be granted unless there is a reasonable possibility that the improper evidence collected by jurors contributed to the conviction." (Citation omitted.) *Bobo v. State*, 254 Ga. 146 (1) (327 SE2d 208) (1985). In *Bobo v. State*, two jurors testified at the motion for new trial hearing that they had gone to the crime scene to determine whether the assault victim could have seen her assailant well enough to identify him. Id. at 147 (1). These jurors told their fellow jurors about their extrajudicial evidence-gathering, admittedly for the purpose of persuading them to vote for conviction. Id. Two other jurors who did not engage in the misconduct testified that these statements did shift their votes in favor of conviction. Id. at 147-148 (1). Because the undisputed evidence established that jurors engaged in misconduct "by relating

personal observations and opinions concerning facts and circumstances surrounding the crime which were critical to determining the credibility of the sole eyewitness' identification[,]" and that the statements influenced other jurors' votes, there was "at least a reasonable possibility" that the misconduct contributed to the conviction such that "the verdict must . . . be deemed inherently lacking in due process." Id. at 148 (1).

In this case, the undisputed evidence showed that one juror interjected into the jury's deliberations extra-judicial evidence of Gaines' bad character which biased at least two other jurors in favor of finding Gaines guilty of the crime charged. Under the circumstances, there was at least a reasonable possibility that the misconduct contributed to the verdict, and the trial court abused its discretion in denying Gaines' motion for a new trial. *Bobo v. State*, 254 Ga. at 148 (1); *Watkins v. State*, 237 Ga. at 685.[2]

2. Because the juror's misconduct during deliberations requires reversal of Gaines' conviction, see Division 1, supra, the issue of whether the trial court erred in denying Gaines' motion for new trial based on the juror's failure during voir dire to disclose her acquaintance with Gaines is moot.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED JULY 26, 2005.

*Robert D. Bryan*, for appellant.
*C. Paul Bowden, District Attorney, Bradford L. Rigby, Assistant District Attorney*, for appellee.

---

[2] Cf. *Joachim v. State*, 263 Ga. 816, 817-818 (3) (440 SE2d 15) (1994) (trial court did not abuse its discretion in denying motion for new trial based on juror misconduct of making negative comments during the jury's deliberations about a witness, based on knowledge from her employment as a teacher at the school attended by the witness, because disparaging comments on the character of a witness are less damaging than negative comments on the character of the defendant and because all 12 jurors testified at the hearing on the defendant's motion for new trial "that the verdict was based solely on the evidence and that the comments of the one juror did not affect the verdict"); *Williams v. State*, 252 Ga. at 9 (1) (trial court did not abuse its discretion in denying motion for new trial where juror who served on a burglary case and gave an affidavit that another juror told the jury during its deliberations that he had seen the defendant attempting to shoplift also stated that what he was told by the other juror did not affect his decision to vote for a conviction); *Satterwhite v. State*, 235 Ga. App. 687, 689-690 (509 SE2d 97) (1998) (physical precedent only) (trial court did not abuse its discretion in denying extraordinary motion for new trial based on juror misconduct of investigating the crime scene where juror who reported the misconduct could not recall all of the evidence properly presented to the jury, the juror's testimony about the impact of the extra-judicial evidence on his decision to vote guilty was "questionable" due to the lapse of four years and was inconsistent, and no other juror testified to corroborate his report).