**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 22, 2016**

# In the Court of Appeals of Georgia

A15A1911. WHATLEY v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Sedrick Cortez Whatley guilty of nine felonies, including kidnapping, in connection with two incidents that occurred on consecutive nights in November 2009. Whatley claims that the trial court erred by denying his motion to suppress because affidavits supporting two search warrants issued in the case were based on information supplied by a confidential informant of unknown reliability. Whatley also argues that there was insufficient evidence to support his kidnapping conviction. We reject both claims of error and affirm.

Viewed in a light favorable to the verdict,[1] the record shows that a clerk at Coleman's Grocery in Fayette County had just closed the store for the night and was

---

[1] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

walking to his car when two men wearing masks approached and ordered him back inside. One of the men had a silver gun. After the men threatened to shoot, the clerk gave them cash, scratch-off lottery tickets, and cigars. The men then forced the clerk inside the store's office and locked the door, and the clerk called 911. Video from the store's security cameras showed that one man wore a dark jacket with fur around the hood and the other wore a lighter hoodie with the letters "L-R-G" on the back.

The following evening, a man drove to a Fayette County ATM to deposit his paycheck. Afterward, a car followed him home and parked in front of his house. Three people got out of the car, one holding a silver gun, and accosted the ATM-user in his driveway. One man grabbed the ATM-user's wallet from his pocket, and then the people left.

Several days later, a detective with the Fayette County Sheriff's Office obtained a warrant to search the residence of a man named Kevin Wygant, Jr. for evidence of the above crimes. When police executed the warrant, they found Whatley inside, along with Wygant. They also found a black jacket with a fur-trimmed hood, a mask, a 9mm silver handgun, a bag of lottery tickets, a box of cigars, and the ATM-user's driver's license, social security card, and credit cards. The detective then

obtained a search warrant for Whatley's residence. There, police found a jacket bearing the letters "L-R-G."

Whatley was arrested and charged with two counts each of armed robbery, aggravated assault, and possession of a firearm during the commission of a crime, and one count each of financial transaction card theft, kidnapping, and burglary. He later confessed to the crimes, except he denied that a gun had been used in the robbery of the ATM-user. Following a jury trial, Whatley was convicted on all counts.[2]

1. Whatley argues that the trial court erred by denying his motion to suppress the evidence found in the two residences because the search warrants were improperly based on information from an informant of unknown reliability. We find no error.

At the hearing on the motion to suppress, the investigating detective testified that he applied to a municipal court judge for the warrant to search Wygant's residence. In support of the application, he submitted an affidavit recounting the two incidents in detail and describing the stolen items, the perpetrator's masks and

---

[2] Wygant was charged with the same crimes as Whatley, but he was tried separately. Wygant was convicted of the crimes associated with the grocery store robbery, but acquitted of those involving the ATM-user. We affirmed his convictions in an unpublished opinion. *Wygant v. State*, 327 Ga. App. XXIX (June 25, 2014) (unpublished).

clothing, and the gun. The affidavit also stated that the Georgia Lottery Commission had recently notified the detective of an attempt at a local business to cash one of the lottery tickets stolen from Coleman's Grocery. After reviewing video footage from the business, the detective was able to identify the person who had tried to cash the ticket. Then a police officer from a nearby jurisdiction told the detective that an unidentified confidential informant had given him information about the incidents. According to the affidavit, the informant

> (herin [sic] known as CI0002C) . . . stated he had picked up [the ticket-casher] at [a Fairburn residence the day before]. During the time CI0002C was at the residence, he spoke with a black male who identified himself as "Kevin" (who was identified by [police] as [Wygant].) During this time the "Kevin" subject bragged about committing a robbery at Coleman's Grocery and stated he had worn a clear mask and used a silver handgun. The "Kevin" subject also bragged about taking money and a large amount of Lottery tickets from the store. CI0002C stated he observed the clear mask hanging on the wall, observed a silver handgun, a black jacket with a fur covered hood, and observed a sack containing numerous Lottery tickets along with clear wrappers. Upon leaving the location, CI0002C learned from [the ticket-casher] that he had received the [lottery] ticket . . . from "Kevin's" residence.

A fellow officer accompanied the detective to apply for the warrant and gave the municipal court judge oral testimony concerning the informant's reliability. That officer told the judge that the informant had provided information in multiple recent gang, drug, and burglary cases at both the state and federal levels. That information, the officer told the judge, had "panned out and led to arrests." Based on the affidavit and the oral testimony, the municipal court judge issued a warrant to search Wygant's residence for Wygant, as well as the mask, gun, fur-trimmed jacket, and lottery tickets.

The detective later applied to a superior court judge for the warrant to search Whatley's residence. In support of that application, the detective submitted an affidavit that was materially identical to his first affidavit, except that it also noted that Whatley had been present at Wygant's residence, and it listed the items found inside that residence. The superior court judge issued a warrant authorizing the police to search Whatley's residence for the "L-R-G" jacket, lottery tickets, silver gun, and mask, as well as a hat.

A judge may issue a search warrant "upon facts sufficient to support probable cause that a crime . . . has been committed."[3] The judge's task in determining whether probable cause exists to issue a search warrant

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the [judge]'s decision in this case is to determine if the [judge] had a substantial basis for concluding that probable cause existed to issue the search warrants.[4]

"The [judge] may consider oral testimony as well as the affidavit in issuing a search warrant."[5]

---

[3] *Galloway v. State*, 332 Ga. App. 389 (772 SE2d 832) (2015) (citations omitted).

[4] Id. at 389-390.

[5] *Flewelling v. State*, 300 Ga. App. 505, 510 (2) (a) (685 SE2d 758) (2009) (punctuation omitted).

When the state attempts to establish probable cause through information gained from an unidentified informant, "the informant's veracity and basis of knowledge are major considerations in the probable cause analysis."[6]

> Among the factors to be considered by a [judge] in assessing the reliability of information from an unidentified informant are: (1) the type of information previously supplied by the informant, (2) the use to which the information was put, and (3) the elapsed time since the information was furnished. Each of these factors need not be shown, so long as the [judge] has sufficient information to judge reliability.[7]

If an unidentified informant is not shown to be reliable, his tip nevertheless may be considered trustworthy if portions of it are sufficiently corroborated by the police.[8] For the corroboration to be meaningful, the tip must "include a range of details relating to future actions of third parties not easily predicted or similar information not available to the general public."[9]

---

[6] *Evans v. State*, 263 Ga. App. 572, 575 (1) (b) (588 SE2d 764) (2003) (citation omitted).

[7] *Copeland v. State*, 273 Ga. App. 850, 851 (1) (a) (616 SE2d 189) (2005) (footnotes and punctuation omitted).

[8] Id.

[9] Id. (punctuation and footnote omitted); see also *Sutton v. State*, 319 Ga. App. 597, 598 (737 SE2d 706) (2013) ("where other investigation supports the information of the informant, this can be considered as a part of the reliable basis for the finding

Here, although the investigating detective's affidavits contained insufficient information to establish the informant's reliability, the other officer's oral testimony to the municipal court judge showed that the informant had proven to be trustworthy by giving helpful information on multiple recent occasions. Moreover, the affidavits showed that the informant's tip was reliable in this case. The informant said that he met Wygant while he was with the ticket-seller, whom the investigating detective had independently identified from video footage. Additionally, the informant gave a range of details about the Coleman's Grocery robbery that would not have been widely known, including describing the mask, gun, and jacket used by one of the perpetrators and the large quantity of lottery tickets that were taken. Finally, the informant claimed that he had seen these items inside Wygant's residence, and the informant provided an address. We conclude that this detailed information, much of it independently corroborated, was sufficient to establish the informant's reliability and therefore to supply probable cause for the warrants.[10]

of probable cause") (citation and punctuation omitted).

[10] See, e.g., *Cole v. State*, 282 Ga. App. 211, 213 (1) (638 SE2d 363) (2006) (informant's tip was reliable even though he had not previously given information to the police, where the tip showed "inside information about [the defendant's] private affairs"); *Munson v. State*, 211 Ga. App. 80, 82 (438 SE2d 123) (1993) (probable cause existed based on information provided by informant of unknown reliability,

2. Among Whatley's convictions was a kidnapping conviction for "abducting[ing] and steal[ing] away" the clerk in the Coleman's Grocery incident. Whatley contends that there was insufficient evidence to support the kidnapping conviction under *Garza v. State*[11] because "[a]ny movement of [the clerk] should be deemed as merely incidental to the offense of robbery and for no other purpose." Again, we disagree.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."[12] The element of "abducting or stealing away" – known as asportation – may be proven by evidence of "slight movement" of the victim.[13] In *Garza*, the Supreme Court held that the movement required to establish the asportation element of Georgia's pre-2009 kidnapping statute must be more than

---

where police corroborated some of the information).

[11] 284 Ga. 696 (670 SE2d 73) (2008).

[12] OCGA § 16-5-40 (a).

[13] OCGA § 16-5-40 (b) (1).

9

"merely incidental" to other criminal activity, and the court set forth four factors to guide this inquiry.[14]

But *Garza* has been superseded by statute for crimes – such as Whatley's – that were committed after July 1, 2009.[15] The kidnapping statute now clarifies that the victim's movement is not considered merely incidental, but instead is sufficient to establish the asportation element of the offense, if it "(A) [c]onceals or isolates the victim; (B) [m]akes the commission of the other offense substantially easier; (C) [l]essens the risk of detection; or (D) [i]s for the purpose of avoiding apprehension."[16] Here, the clerk testified that after taking items inside the store, the robbers forced him into the office against his will and locked the door. This testimony supports the reasonable inference that the robbers isolated the clerk to expedite their escape, thereby lessening the risk of their detection. Thus, the evidence was sufficient to establish the asportation element of kidnapping.

*Judgment affirmed. Doyle, C. J., and Boggs, J., concur.*

---

[14] 284 Ga. at 702 (1). Those factors are the duration of the movement, whether it occurred during the commission of a separate offense, whether it was an inherent part of that separate offense, and whether the movement itself significantly endangered the victim independent of the danger posed by the separate offense. Id.

[15] See *Gonzalez v. Hart*, 297 Ga. 670, 672 n.3 (777 SE2d 456) (2015).

[16] OCGA § 16-5-40 (b) (2).