**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 18, 2016**

# In the Court of Appeals of Georgia

A16A0727. LLOYD v. THE STATE.

McFADDEN, Judge.

After a jury trial, Marcus Lloyd was convicted of aggravated assault and possession of a firearm during the commission of a felony. Just after he was sentenced, Lloyd learned that a juror had engaged in misconduct during jury deliberations. That juror had researched certain legal definitions on the Internet and, while out on a lunch break, had asked a police officer to explain the law of "stand your ground." Lloyd filed an emergency motion for new trial, and once the trial court denied it, he filed this appeal. We conclude that the state has failed to overcome beyond a reasonable doubt the presumption of prejudice that arises from such juror misconduct in criminal cases. We therefore reverse Lloyd's convictions.

1. *Facts*.

Lloyd was charged with malice murder, two counts of felony murder, two counts of aggravated assault, and five counts of possession of a firearm during the commission of a felony. Voir dire began on a Monday morning and continued after a lunch break. Before breaking for lunch, the trial court instructed the prospective jurors to refrain from independent research:

> While you're at lunch, please do not look up anything about this case or do any research. . . . Please do not look up anything about the case on the Internet or through the cell phones or anything like that because that would be improper. What you learn about this case you should learn here in this courtroom and nowhere else because the laws are designed to protect the accused, and only admissible evidence is allowed to be presented to jurors during the trial, and we try to preserve that. So please do not anytime during the trial look up anything about the case or any law. I'll tell you the law, the lawyers will present the facts, and you put the two together to try to try the case, to decide the case that's given to you. So please observe that.

Before recessing that Monday afternoon, the court again instructed the prospective jurors not to research the law or any other matters concerning the case.

By 10:00 on Tuesday morning, the jury had been selected and seated. The court gave the jury preliminary instructions, including that they should not discuss the case

2

with anyone, conduct any independent research about the case, search the Internet to help them decide the case, or conduct any sort of online legal research.

The state began presenting its case shortly before 10:30 that morning. The evidence showed that an officer who was driving by saw the victim on the ground, Lloyd running toward the victim, and then Lloyd yanking shoes off the victim's feet. He thought it looked suspicious so he stopped his car and got out. After calling an ambulance for the victim, the officer spoke with Lloyd, who said that he had placed an ad on Craigslist to sell some sneakers and had agreed to meet the victim at a gas station to make the sale. Lloyd told the officer that he had allowed the victim to try on the shoes and that once the victim had both shoes on, the victim pulled out what Lloyd believed to be a knife, tried to cut Lloyd across his stomach, and took off running. Lloyd told the officer that when the victim swiped at him, he was afraid. He shot at the victim once in the parking lot, chased him, and caught him. The victim swiped at Lloyd again and began running away, when Lloyd shot at him again, trying to get him to stop. The entire incident lasted six to eight seconds. No knife was found. A medical examiner with the Georgia Bureau of Investigation testified that the victim died from two gunshot wounds, one in the back and one in the buttock. The state concluded its case the next day, Wednesday.

Lloyd testified in his own defense. He testified that he shot the first time in fear and the subsequent times, as the victim was fleeing, to scare the victim into stopping. But Lloyd also testified that he was still in fear while the victim was fleeing because he did not "know who he's with and what he's about to do nor his intent at that point." The defense rested on Wednesday and the court charged the jury. The court included the following charge on self-defense:

> In applying the law of self-defense, a defendant is justified to use force against another person in defense of self or others and the standard is whether circumstances were such that they would excite not merely the fears of the defendant, but the fears of a reasonable person.

> For the use of force to be justified under the law, the accused must truly have acted under the influence of these fears and not in a spirit of revenge.

> What the facts are in this case is a matter solely for you, the jury, to determine given all the circumstances involved in this case.

> One who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense or in using force that's likely to cause death or great bodily harm if one reasonably believes that such force is necessary to prevent death or great bodily injury to himself or to prevent the commission of a forcible felony.

The use of excessive or unlawful force while acting in self-defense is not justifiable and the defendant's conduct in this case would not be justified if you find that the force used exceeded that which the defendant reasonably believed was necessary to defend against the victim's use unlawful force, if any.

Less than ten minutes after beginning deliberations late in the day, the jury returned to the courtroom to ask the court for written "definitions of the law." The court instructed the jurors that he did not have the charges in written form that he could give to them. The jury decided to recess for the day.

That evening, a juror whose initials are R. R. researched the definitions of malice murder and felony murder on the Internet. At the hearing on Lloyd's emergency motion for new trial, Juror R. R. testified that the definitions he found were the same as the definitions the state had shown on a projection screen during closing argument.

When the jury reconvened Thursday morning, Juror R. R. attempted to speak with the other jurors about his research, but none of the other jurors wanted to discuss malice murder or felony murder because only one juror, Juror R. R. himself, voted to convict on those charges. Within the first two hours of reconvening, the jury sent out a note asking the following questions of the court:

Please provide definition of "stand your ground".

When is it not allowed

What is not considered "stand your ground"?

Is pursuit included?

In response, the trial court brought the jury into the courtroom, where he instructed the jury that Georgia does not have the legal concept "stand your ground." The court explained:

> Mr. Foreman, I have your note. Thank you. We'll be glad to go over that with you. Your first question, and I'll read it and then I'll try to answer it is: Please provide the definition of "stand your ground".
>
> Well, ***"stand your ground" is a synonym not used under Georgia law***. It has, you know, it's justification, defense of justification, is the way it's referred to which is just another way of saying the same things. And I have, I'll go over that again with you. When it's not allowed that will be given to you, too. And what is not considered "stand your ground".
>
> I think I'll just re-charge you in that whole theory, and that will give you a better understanding, and then you have to make the decision. So you understand that?

6

THE FOREPERSON: Yes, sir.

THE COURT: Now I'll give you that charge. When I finish, see if that answers your questions, okay?

THE FOREPERSON: Thank you, sir.

THE COURT: And your last question: Is pursuit included. That will be for you, you know, that will be explained in the charge, too, I think. It's quite common for this to have to happen, so please just bear with us. Here's the charge:

An affirmative defense is a defense that admits doing the act charged, but it seeks to justify, excuse, or mitigate it. Once an affirmative defense is raised, the burden is upon the state to prove -- disprove it beyond a reasonable doubt. The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct.

A defense of justification can be claimed when a person's conduct is justified as follows: A person is justified in threatening or using force against another person when and to the extent that he reasonably believes that such threat of force is necessary to defend himself against the other's imminent use of unlawful force.

A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself

7

or to prevent the commission of a forceful felony upon him and the state has the burden of proof beyond a reasonable doubt that the defendant was not justified.

A forcible felony, as I mentioned, is a felony that involves the use of or threat of physical force or violence against any person. In applying the law of self-defense, a defendant is justified in using force against another person and the standard is whether the circumstances were such that they would excite not merely the fears of the defendant but the fears of a reasonable person. For the use of force to be justified under the law, the accused must truly have acted under the influence of these fears and not in a spirit of revenge. What are the facts in this case is a matter solely for you, the jury, to determine given all the circumstances of the case.

One who is not the aggressor is not required to retreat but before being justified and using such force as is necessary for personal defense or using force that is likely to cause death or great bodily harm if one reasonably believes that such force is necessary to prevent death or great bodily harm to oneself or to prevent the commission of a forcible felony.

The use of excessive force or unlawful force while acting in self-defense is not justifiable, and the defendant's conduct in this case would not be justified if you find that the force used exceeded that which the defendant reasonably believed was necessary to defend against the alleged victim's use of unlawful force, if any.

And I think that covers the entire section. Let me see -- yeah, the covers the entire law as it applies in Georgia. Does that kind of answer your question?

THE FOREPERSON: Yes, sir.

THE COURT: If you have any, need it gone over again, just let me know. I don't mind going over it any time.

THE FOREPERSON: That answers our question. . . . (Emphasis supplied).

While the jury was on its lunch break, Juror R. R. went to a grocery store. He testified that he saw a police officer in the store, approached the officer, and asked him to explain the law of "stand your ground." He said that he saw it as an opportunity to have the concept explained in laymen's terms because the trial court's response to the jury's question did not explain it. Juror R. R. did not remember exactly what the police officer told him, but, according to Juror R. R., it was something like:

> You can only go to a certain limit. You have to have fear. . . . [Y]ou cannot be angry and recover things. You have to feel threatened. . . . [T]here's a point where your life is threatened and you can "stand your ground". But then once that element of fear goes away, . . . you cannot

9

go beyond that point and [] shoot somebody. . . or use any deadly force. . . [b]ecause you're not scared.

The officer also told Juror R. R. that "you cannot pursue anyone." When Juror R. R. returned from lunch, he related to some of the other jurors that he had spoken with a police officer about "stand your ground" and asked if they could discuss the issue. According to Juror R. R., the jury "never really got into that either [because e]veryone's minds were pretty much made up."

That afternoon, the jury informed the court that it was unable to come to a unanimous verdict on any count. The court instructed the jury to continue deliberating. About two hours later, the court recessed for the day.

Juror R. R. decided that he would create a presentation to illustrate his position to the other jurors. A flight instructor, he wanted to create a diagram that would show the relevant factors in Lloyd's case in the same manner that he would use a diagram to show the relevant factors in an airplane crash. He wanted to include "stand your ground" in his diagram, and he had spoken with the officer at the grocery store so that he could complete the diagram. According to Juror R. R., the officer's explanation of "stand your ground" gave Juror R. R. "a good idea of what it was to illustrate that point."

At home that Thursday night, Juror R. R. used the officer's information about "stand your ground" to create a draft of his diagram. Juror R. R. wanted to correlate the point of impact in a plane crash with the point at which Lloyd shot the victim. He testified that "that's where [he] used the 'stand your ground.' That's why [he] wanted to ask a question about that, to make sure [he] had that right."

When the jury reconvened on Friday, Juror R. R. drew his diagram in the jury room. That diagram was admitted at the hearing on the motion for new trial. On it, Juror R. R. had written:

> From this point when [the victim] flees threat element gone so *no* self-defense as stand your ground states. All that is left is preserving personal property you cannot use deadly force to protect that. *Fact* is Lloyd pursued to recover personal property used deadly force to cause death & taking shoes off. For whatever reason, subject flees, *no* threat – that defense doesn't fly.

He testified that he had "done some research on it, so that's what [he] did, and that's how [they] ultimately got [their] decision." Just after Juror R. R. made his presentation, he heard a juror say, "Oh. I see it now," and the jury reached a verdict.

Until that point, the vote had been eleven to one for acquittal; Juror R. R. was the only juror voting all along for conviction. In fact, that morning, the prosecutor had

told the court that he and defense counsel were in agreement that it was appropriate to declare a mistrial. Accordingly, within 40 minutes of the jury resuming deliberations Friday morning, the court called in the jurors to determine whether they had made any progress. The foreman informed the court that the jury was very close to reaching a verdict, so the court allowed them to continue deliberations. Forty minutes later, the jury returned the verdict, finding Lloyd guilty of one count of aggravated assault and one firearms offense and not guilty of the other charges.

Some of the jurors remained in the courtroom during sentencing, where the court sentenced Lloyd to 25 years. Some jurors were upset with the sentence, approached defense counsel, and told him about Juror R. R.'s misconduct. As a result, Lloyd filed the instant emergency motion for new trial.

During the hearing on the motion, the trial court heard testimony from five jurors: the state called two jurors as witnesses, including Juror R. R., and Lloyd called three jurors as witnesses. The remaining seven jurors did not testify. (Lloyd presented affidavit testimony of two additional jurors, but the trial court ruled that the affidavits were largely inadmissible and did not refer to them in his order.)

2. *Presumption of harm.*

The state concedes that Juror R. R. engaged in misconduct, but it argues that the misconduct was harmless. We disagree.

In regard to improper juror communications in criminal cases, our Supreme Court has held, in a long line of authority, that "[t]he rule in this [s]tate is that where such an improper communication occurs, there is a presumption of harm and the burden is on the [s]tate to show the lack thereof." *Jones v. State*, 258 Ga. 96, 96-97 (366 SE2d 144) (1988), citing *Whitlock v. State*, 230 Ga. 700, 700-702 (1) (198 SE2d 865) (1973) and *Dudley v. State*, 179 Ga. App. 252, 255 (3) (345 SE2d 888) (1986); accord. *Simmons v. State*, 291 Ga. 705, 707 (4) (733 SE2d 280) (2012); *Greer v. Thompson*, 281 Ga. 419, 421 (637 SE2d 698) (2006). The state must overcome this presumption beyond a reasonable doubt, and we must determine whether the juror misconduct "is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injustice." *Simmons*, 291 Ga. at 707 (4) (citation omitted).

Both parties incorrectly take the position that this presumption no longer obtains in light of our decision in *Armstrong v. Gynecology & Obstetrics of DeKalb, P.C.*, 327 Ga. App. 737, 738-741 (1) (761 SE2d 133) (2014). Because this is a criminal case, *Armstrong* is not controlling. In *Armstrong*, we reasoned that, under

13

the new Evidence Code, it was appropriate to look to federal cases on the issue of juror misconduct, because new OCGA § 24-6-606 (b) is comparable to Fed. R. of Evid. 606 (b) and both statutes concern juror testimony about verdicts. Id. at 738 (1). (The text of these statutes is reproduced in full in the margin.[1]) But *Armstrong*'s

---

[1]OCGA § 24-6-606 (b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith; provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention, whether any outside influence was improperly brought to bear upon any juror, or whether there was a mistake in entering the verdict onto the verdict form.

Fed. R. of Evid. 606 (b) provides:

During an Inquiry into the Validity of a Verdict or Indictment.

(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any

14

holding that in civil cases there is no presumption of prejudice arising from juror misconduct merely reaffirms prior authority. See, e.g., *Wood v. Food Giant*, 183 Ga. App. 604, 605 (3) (359 SE2d 410) (1987); *Smith v. Blackshear*, 127 Ga. App. 610, 611 (194 SE2d 519) (1972); *Bi-Lo v. Stanciel*, 148 Ga. App. 614, 616 (4) (251 SE2d 834) (1979). *Armstrong* cannot be read to undermine the long line of Supreme Court authority holding that such a presumption does obtain in criminal cases — especially since the analyses in that line of authority do not cite the Evidence Code. See *Jones,*

---

statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions. A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

(C) a mistake was made in entering the verdict on the verdict form.

15

supra, *Whitlock,* supra, *Dudley*, supra, *Simmons,* supra, *Greer*, supra. So the trial court properly presumed harm, given the undisputed juror misconduct on a central issue in the case.

3. *Communication with police officer.*

We review the trial court's conclusion that Juror R. R.'s communication with a police officer was harmless in light of that presumption. The trial court so concluded on the basis that the conversation involved a legal concept, not the facts of the case nor the officer's opinion about a particular hypothetical fact scenario and that the officer's explanation was consistent with the court's jury instructions and Georgia law. The court resolved a troubling conflict in the jurors' testimony in favor of the state: Although two of the jurors called by Lloyd testified that Juror R. R. told them that the police officer said it was never permissible to shoot someone in the back, Juror R. R. testified that he did not ask the officer about shooting someone in the back. The trial court found the state's witnesses to be more credible. The court concluded that since Juror R. R. did not communicate to his fellow jurors that the police officer said it is never permissible to shoot a victim in the back, the state overcame the presumption of harm from Juror R. R.'s misconduct.

16

We must defer to the trial court's findings of fact, but we disagree with his conclusion of law. Aside from the shot-in-the-back issue, the jury had specifically asked the court whether pursuit was included in "stand your ground." The court told the jury that "stand your ground" is not a specific concept in Georgia, but he did not answer the jury's question directly. Instead, the court properly instructed the jury that an accused is justified in using force when he reasonably believes that force is necessary to prevent death or great bodily harm and when the circumstances would excite the fears of a reasonable person, and that the accused must truly have acted under the influence of these fears and not in a spirit of revenge. At the motion for new trial hearing, Juror R. R. himself testified that, "I asked a question in here, sent a message out on this very point and it didn't really get explained or anything," so he decided to ask the officer, who told him that it is not permissible to pursue someone in a stand-your-ground situation. This testimony was confirmed by one of the jurors called by Lloyd, who testified that from the way Juror R. R. explained it, she concluded that the officer had told Juror R. R. that it was unjustifiable to shoot the victim when he turned around and ran. And Juror R. R.'s diagram – which he presented just before the jury reached its verdict – included language about pursuit and "stand your ground." The testimony of the jurors indicates that Juror R. R.'s

17

presentation to the jury of the information from the police officer via the diagram convinced them that they could not consider the issue of whether Lloyd's fear of harm was reasonable when Lloyd shot the victim as the victim was running. We also observe that the trial court never heard from seven of the jurors, so it would be pure speculation to say that they were not affected by Juror R. R.'s misconduct. See *Chambers v. State*, 321 Ga. App. 512, 519-520 (1) (739 SE2d 513) (2013) (physical precedent only).

"[B]ecause the juror's misconduct in the present case affected the key issue of self-defense and the verdict became unanimous only after the introduction of the improper [communication], we conclude that there is a reasonable possibility that the juror's misconduct contributed to [Lloyd's] conviction." *Hammock v. State*, 277 Ga. 612, 614 (2) (592 SE2d 415) (2004). The state did not overcome the presumption of prejudice beyond a reasonable doubt.

4. *Internet research.*

Given our holding in division 3, we do not reach Lloyd's argument that the trial court erred in finding that Juror R. R.'s researching the definitions of malice murder and felony murder was harmless.

18

*Judgment reversed. Miller, P. J., concurs; McMillian, J., concurs fully in divisions 1, 2 and 4, and in the judgment only in division 3.*