**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 9, 2018**

# In the Court of Appeals of Georgia

A17A1948. DELEON v. THE STATE.

BARNES, Presiding Judge.

In connection with a series of criminal acts perpetrated upon the victim, Alberto Eddie Deleon was convicted of armed robbery, kidnapping with bodily injury, and hijacking a motor vehicle. Deleon thereafter sought, but was denied, a new trial. In this appeal, Deleon contests the sufficiency of the evidence, the final charge to the jury, the trial court's response to alleged juror misconduct, and the rejection of his ineffectiveness claim. Because Deleon has demonstrated no reversible error, we affirm.

1. When an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III ) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

So viewed, evidence elicited from the State's witnesses showed the following. At about 1:00 a.m. on April 5, 2011, the victim was at a truck stop where he was approached by Deleon who told the victim that he needed gas for his car, which had stopped at a nearby interstate exit. The victim agreed to drive Deleon to a gas station so that Deleon could purchase a container of gasoline. While the two men were in transit in the victim's pickup truck, Deleon mentioned the possibility of obtaining road-side assistance through some other means, so the victim stopped near Deleon's broken-down car to let Deleon out of the pickup truck where he could wait.

But at that point, Deleon began stabbing the victim in the head with a knife. Deleon then took the victim's wallet and got cash, credit cards, and a debit card out of it. Deleon then demanded that the victim drive him to an ATM and supply him with additional cash. Bleeding from the multiple stab wounds, the victim got on the interstate and drove approximately 5 or 6 miles to reach a particular gas station, where he not only anticipated finding an ATM, but he also planned to jump out of the pickup truck, run into the station's convenience store, and ask that someone call 911. But as the victim was turning into the parking lot of the gas station, Deleon demanded that the victim proceed to a different ATM. Complying, the victim returned to the

2

interstate and drove several additional miles to reach a drive-thru ATM at a bank. The victim withdrew hundreds of dollars and handed the cash to Deleon.

Deleon next demanded the victim to help him move his car from the side of the road to the truck stop (where the two men had met). Complying with Deleon's explicit instructions, the victim drove the approximately 13 miles back to Deleon's car, then exited his pickup truck, and sat in the driver's seat of Deleon's car. Deleon then moved into the driver's seat of the victim's pickup truck, and drove the pickup truck so as to push his own car, which the victim steered to the truck stop. Once there, Deleon used the victim's debit card to put gas in his car. But the car still would not function, apparently due to a dead battery.

Deleon then demanded the victim to help him push his car across the street to a parking lot, which was dark. Again complying with Deleon's explicit instructions, the victim sat in Deleon's vehicle and steered it to the designated area, while Deleon drove the victim's pickup truck to push the disabled car. When they arrived at the parking lot, the men got out of the vehicles. Deleon began rummaging through his own vehicle, telling the victim that he was searching for something with which to murder him. The victim sprinted back toward the truck stop; along the way, he fell so hard that he fractured a shoulder bone. The victim struggled back to his feet and

3

continued to run toward the truck stop, but eventually the victim could run no more and fell down again. Lying on the ground, the victim yelled for help and pleaded that someone call 911. A man at the truck stop saw and heard the victim, and dialed 911. Meanwhile, Deleon fled the scene in the victim's pickup truck.

Challenging the sufficiency of the evidence to support the conviction of kidnapping with bodily injury,[1] Deleon contends that the state failed to prove the "asportation"[2] or "movement" element as required by OCGA § 16-5-40 (b). Pursuant to that Code provision, "slight movement shall be sufficient," however:

> (1) . . . any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.
>
> (2) Movement shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the

---

[1] See OCGA § 16-5-40 (a) ("A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."), (d) (4) (enhancing punishment where "the person kidnapped received bodily injury").

[2] "The element of 'abducting or stealing away' . . . [is] known as asportation." *Whatley v. State*, 335 Ga. App. 749, 753 (2) (782 SE2d 831) (2016), quoting OCGA § 16-5-40 (a).

> commission of the other offense substantially easier; (C) Lessens the
> risk of detection; or (D) Is for the purpose of avoiding apprehension.

According to Deleon, any movement of the victim that could have been attributed to him was slight, occurred while in the commission of the other offenses for which he was convicted (armed robbery and hijacking a motor vehicle), and was merely incidental thereto.

This contention lacks merit. The State adduced evidence of forced movement that spanned a number of miles *and* that was independent of both crimes of armed robbery and hijacking a motor vehicle. As alleged in the indictment,[3] the armed robbery was complete when Deleon took the victim's wallet and contents at knife point – which offense thus occurred *before* Deleon forced the victim to drive several miles to an ATM, only to force the victim to proceed to a more distant ATM in a desolate location. After the victim withdrew cash from that ATM and handed it to Deleon, Deleon forced the victim back to his broken-down car beside the interstate exit, then to a gas station, and ultimately to an isolated, dark parking lot. And none

---

[3] The armed robbery count of the indictment alleged that Deleon did "with the intent to commit a theft, take a wallet with its contents, which included United States currency . . . and a financial transaction card, from the person of [the victim], by use of . . . a knife."

of the foregoing movement was either necessary or an inherent part of the crime of hijacking the victim's pickup truck.

Viewed in the light most favorable to the prosecution, the evidence showed movement that was substantial, involving a number of miles; movement that was independent of the other crimes of which Deleon was convicted; and movement that concealed or isolated the victim, that lessened the risk of detection, and that served the purpose of avoiding apprehension. Therefore, the evidence was sufficient for the jury to find the asportation (or movement) element of kidnapping as required by OCGA § 16-5-40 (b). See *Thomas v. State*, 320 Ga. App. 101, 103-104 (1) (739 SE2d 417) (2013) (rejecting argument that movement of victim was merely incidental of the battery offense, where the movement of the victim occurred *after* the defendant grabbed and lifted the victim); see also *Andemical v. State*, 336 Ga. App. 661, 669 (786 SE2d 238) (2016); *Whatley*, 335 Ga. App. at 754 (2). Accord *Flournoy v. State*, 294 Ga. 741, 750-751 (7) (755 SE2d 777) (2014) (rejecting argument that any movement of the victims was "part and parcel" of other crimes such that asportation was not proved, where the movement was substantial, involving a number of miles; the movement, though occurring during the commission of the armed robberies, was not an inherent or necessary part of other crimes; and the movement itself presented

6

a significant danger to the victims because it isolated the victims and further prevented them from seeking protection or rescue).

2. Deleon contends that, during the final charge, the trial court failed to fully explain "asportation" as contemplated by OCGA § 16-5-40 (b). Regarding kidnapping, the court charged:

> A person commits kidnapping when that person abducts or steals away any person without legal authority or warrant and holds such person against such person's will. To prove abduction or stealing away, the State must prove that the victim was moved. The movement of the victim must be more than a mere change of position and such movement must be more than that which is incidental to or necessary to the completion of another crime.

Deleon points out that the charge failed to expressly state that "slight movement" shall be sufficient, OCGA § 16-5-40 (b) (1), unless such slight movement occurred during the commission of another offense and was "merely incidental" thereto; Deleon further points out that the charge given the jury failed to recite those instances of movement specified by OCGA § 16-5-40 (b) (2) which shall not be considered "merely incidental" to another offense. Consequently, Deleon asserts, the jury lacked adequate guidelines for assessing whether the movement in this case was sufficient pursuant to OCGA § 16-5-40 (b).

7

As the State concedes, Deleon has shown that the trial court erred by failing to instruct the jury on relevant parts of the kidnapping statute.[4] Deleon has not, however, shown that the error is reversible.

> Because [Deleon's trial counsel] did not object to [the kidnapping] charge at trial, we review it only for plain error, see OCGA § 17-8-58 (b), meaning that we will reverse the trial court only if the error was obvious, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Inman v. State*, 294 Ga. 650, 655 (4) (755 SE2d 752) (2014), citing *State v. Kelly*, 290 Ga. 29, 33 (718 SE2d 232) (2011).

Viewing the jury instructions as a whole, we find no plain error under the circumstances here. Though the charge fell short of explaining relevant statutory

---

[4] The kidnapping charge given was authorized under *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), which enunciated four factors for assessing the asportation element of kidnapping. Id. at 702 (1). Later, the Georgia Suggested Pattern Jury Instructions incorporated the *Garza* standard. See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.26.30 (Kidnapping). But "*Garza* has since been superseded by statute for offenses occurring after July 1, 2009." *Gonzalez v. Hart*, 297 Ga. 670, 672, n. 3 (777 SE2d 456) (2015), citing OCGA § 16-5-40 (b) (2). Accordingly, the above-referenced section of the Georgia Suggested Pattern Jury Instructions advises, "There will be further revisions to this charge based upon the new statutory amendment. . . . For cases arising on or after July 1, 2009, judges should review the current version of OCGA § 16-5-40."

language, the kidnapping charge given was not overtly wrong. Moreover, it was undisputed at trial that Deleon and the victim traveled together to *all* the places set out above. Deleon took the stand as the sole defense witness. His version of events paralleled that of the victim, except in two aspects material here: (i) the victim was stabbed by Deleon in self-defense; and (ii) the victim's traveling with Deleon had been wholly voluntary. Deleon testified that when they initially left the truck stop to get a container of gasoline at about 1:00 a.m., he nodded asleep in the passenger's seat of the victim's pickup truck. According to Deleon, when he awakened, he discovered that the victim had stopped the truck alongside the road, that the victim's head and hands were on his crotch, and that the victim was unzipping his (Deleon's) pants. As Deleon described at trial, "[W]hen I woke up and [saw] him doing that, I reached in my pocket, grabbed my knife, and I started poking at him, and I started hitting him with my left hand to get him up off me." At that point, Deleon testified, the victim abandoned his sexual advances, pleaded with Deleon not to contact police, and told Deleon that he would give him money. And to that end, Deleon recounted at trial, despite bleeding from his multiple stab wounds, the victim voluntarily drove to both ATMs, withdrew cash, and gave it to Deleon; then the victim voluntarily drove Deleon back to his stalled car and helped him push it first to the truck stop,

9

then to the parking lot across the street. (Thereafter, Deleon admitted at trial, "I . . . stole the truck.")

But "[t]he jury simply did not conclude that [Deleon] actually acted in self-defense," *Inman*, 294 Ga. at 655 (4); nor did the jury conclude that the victim – undisputedly bleeding from multiple head wounds – had voluntarily accompanied Deleon.[5] See generally id. Hence, in light of the quantum of evidence showing movement of the victim,[6] Deleon has failed to show that the cited omission(s) from the kidnapping charge affected his "substantial rights, which in the ordinary case means . . . the error affected the outcome of the trial court proceedings." (Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2); see *Huff v. State*, 300 Ga. 807, 810-811 (2) (797 SE2d 688) (2017) (concluding that no plain error resulted from the failure to charge relevant statutory language, citing that the charge given was not overtly incorrect, and further citing the quantum of evidence adduced against the defendant); see generally *English v. State*, 300 Ga. 471, 473-475 (2) (796 SE2d 258) (2017).

---

[5] See generally *State v. Clements*, 289 Ga. 640, 647-648 (2) (c) (715 SE2d 59) (2011) (noting principle that the kidnapping statute is intended to address movement serving to substantially isolate the victim from protection or rescue).

[6] See Division 1, supra.

10

3. Deleon contends that the trial court erred in its response to alleged juror misconduct and that he is thus entitled to a new trial.

After the final jury charge, the court recessed trial proceedings for lunch. During that break, courtroom bailiffs reported to the trial court that one of the jurors had been texting or otherwise using a communications device during closing arguments and during the final charge. When the jurors returned from lunch, the trial court convened a hearing with that juror. Upon the court's questioning, the juror explained that he had been using his cellphone only to take notes and that he had not been communicating with anyone. The juror offered to show the court his notes, but the court declined to inspect the juror's cellphone. The court asked defense counsel whether he wished to question the juror, and defense counsel said no.

At defense counsel's request, however, the court summoned into the courtroom the remaining jurors, then instructed them all that jurors are allowed to take notes during trial proceedings; that whether such notes are taken by pen/paper or by an electronic device is immaterial; and that if/when such notes are taken by a juror, the notes do not place that juror in any superior position with respect to determining facts. Defense counsel asked the court to declare a mistrial, but that request was summarily denied. Deliberations then commenced.

11

On appeal, Deleon complains that the trial court did not examine the contents of the cellphone. Deleon additionally complains that the trial court did not voir dire the remaining jurors as to whether an improper communication had occurred. As Deleon posits, that juror could have been using his cellphone to conduct independent research, which information that juror might have shared with other jurors.

As our Supreme Court recognized well over a century ago, when a jury is selected and sworn to try the criminally accused, "[the law] contemplates that no outside influence shall be brought to bear on the minds of the jury, and that nothing shall occur outside of the trial which shall disturb their minds in any way." *Shaw v. State*, 83 Ga. 92, 100 (1) (9 SE 768) (1889). And as Deleon points out, where misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and the onus is upon the State to remove that presumption. See *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990); *Lloyd v. State*, 339 Ga. App. 1, 7-9 (2) (792 SE2d 445) (2016) (reaffirming proposition that, in the criminal context, a presumption of prejudice arises upon a showing of juror misconduct). A jury verdict will not be upset solely because of juror misconduct, however, "unless such conduct [was] so prejudicial that the verdict must be deemed inherently lacking

12

in due process." (Citation and punctuation omitted.) *Boone v. State*, 293 Ga. App. 654, 662 (9) (667 SE2d 880) (2008).

For reasons explained below, we find no error in the trial court's decision not to grant a new trial on the ground of juror misconduct.[7] As soon as was practicable – and before the jury began deliberating, the trial court convened a hearing at which the juror stated that he had been using his device solely to take notes of the trial proceedings. Although Deleon asserts that the trial court should have questioned or polled the remaining jurors, we have held that a trial court is not mandated in every instance of alleged juror misconduct to question each juror individually. *Merritt v. State*, 248 Ga. App. 709, 711 (1) (548 SE2d 427) (2001). And under the circumstances here, the trial court was authorized to find the juror's explanation credible, and we must defer to that finding. See *Lloyd*, 339 Ga. App. at 9 (3) (deferring to the trial court's findings of credibility in connection with determining whether, and to what extent, juror misconduct played a role in deliberations); see also *Hardy v. State*, 242 Ga. 702, 704 (3) (251 SE2d 289) (1978); accord *Gaines v. State*,

---

[7] See *Gaines v. State*, 274 Ga. App. 575, 575 (618 SE2d 197) (2005) ("[M]otions for new trial because of improper conduct of jurors are addressed to the sound discretion of the trial judge. Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination.") (citation and punctuation omitted).

274 Ga. App. 575, 575 (618 SE2d 197) (2005) ("[W]hether juror misconduct occurred is a question of fact for the trial judge.") (citation and punctuation omitted). Notably, at the hearing on Deleon's motion for new trial, Deleon's counsel conceded that the underlying claim of juror misconduct hinged on "pure speculation."

Where, as here, "the substance of the [juror's conduct] is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant." (Citation and punctuation omitted.) *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). Accordingly, because the juror's conduct – as found by the trial court (of using his cellphone to take notes during the trial[8]) – was not so prejudicial that the verdict must be deemed inherently lacking in due process, this contention supplies no basis to disturb the judgment. See *Holcomb*, 268 Ga. at 103 (2); *McIlwain v. State*, 264 Ga. 382, 383-384 (3) (445 SE2d 261) (1994) (concluding that the trial court did not err by denying request for mistrial on the ground of juror

---

[8] Deleon does not challenge the substance of the trial court's apparent curative instructions with respect to a juror's use of an electronic device to take notes. And we need not reach that issue. See, however, *Owens v. State*, 324 Ga. App. 198, 201 (1) (a) (749 SE2d 783) (2013) (finding "no provision entitling a defendant to demand that jurors be furnished with the means for taking notes in every case," and reiterating that "absent special or unusual circumstances, the decision whether to allow the jury to take notes lies in the sound discretion of the trial court"). See also *Potts v. State*, 259 Ga. 96, 104 (21) (376 SE2d 851) (1989) (concluding that the trial court did not abuse its discretion in allowing jurors to take notes).

misconduct, where "[u]pon the trial court's inquiry" into the juror's conduct at issue, it was clear that the complained-of conduct – the juror had privately reported to a bailiff his concern that defense counsel may have been signaling the defendant while defendant was testifying – was not harmful to the defendant); *Meeker v. State*, 282 Ga. App. 77, 81 (5) (637 SE2d 806) (2006) (rejecting claim that defendant was entitled to a new trial based on claim that jurors had begun deliberations before the close of evidence, where the trial court's finding of no misconduct was supported by jurors' testimony at new trial hearing that they had not done so). See generally *Lawton v. State*, 281 Ga. 459, 463 (3) (640 SE2d 14) (2007) (explaining that the trial court did not err in refusing to declare mistrial on the ground of juror misconduct, where there was no evidence showing that the deliberating jurors had been exposed to improper information).

4. Deleon contends that his trial counsel rendered ineffective assistance. Pursuant to *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984),

> [i]n order to succeed on [a] claim of ineffective assistance, [a defendant] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If [the defendant] fails to

15

meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Deleon asserts that his trial counsel should have questioned the juror at issue, should have requested to examine that juror's cellphone, and should have conducted voir dire upon the remaining jurors to ascertain whether any improper communication had occurred.[9] But at the hearing on his motion for new trial, Deleon presented no evidence of what any of these measures would have produced. Consequently, he failed to demonstrate any prejudice as to this ground. See *Cruz v. State*, 305 Ga. App. 805, 813 (3) (f) (700 SE2d 631) (2010) (explaining that defendant must demonstrate actual prejudice when claiming ineffective assistance of trial counsel based upon alleged juror misconduct); see also *Walker v. State*, 288 Ga. 174, 179-180 (3) (b) (702 SE2d 415) (2010) (holding that the defendant did not prove prejudice when he "presented no evidence at the motion for new trial hearing to

---

[9] See Division 3, supra.

16

support his bald assertion that there was a reasonable probability that the outcome of the proceeding would have been different").

(b) Deleon complains that his trial counsel did not object to the kidnapping charge.[10] This complaint likewise lacks a showing of prejudice. Having viewed the final charge as a whole, and having considered the trial evidence, we conclude that there is no reasonable probability that, but for the cited omission(s), the outcome of Deleon's trial would have been different. See generally *Propst v. State*, 299 Ga. 557, 566 (3) (b) (788 SE2d 484) (2016) (concluding that because no reasonable probability existed that the outcome of defendant's trial would have been different had trial counsel requested an additional jury instruction, the ineffectiveness claim lacked a showing of prejudice).

*Judgment affirmed. McMillian and Mercier, JJ., concur.*

---

[10] See Division 2, supra.

17