302 Ga. 726
FINAL COPY

S17A1912. FORTE v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Donnie McQuinn Forte appeals his convictions for murder and kidnapping, among other crimes, contending that the evidence was insufficient to support the verdict and that the trial court gave the jurors an incomplete charge on malice murder.[1] For the reasons set forth below, we

---

[1] On July 3, 2012, Forte was indicted for malice murder, felony murder predicated on kidnapping, felony murder predicated on armed robbery, kidnapping with bodily injury, armed robbery, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and possession of cocaine. The State subsequently nolle prossed the counts for felony murder predicated on armed robbery, armed robbery, and possession of a firearm by a convicted felon. Following a jury trial beginning on October 16, 2013, Forte was found guilty of malice murder, felony murder predicated on kidnapping, kidnapping with bodily injury, possession of a firearm during the commission of a felony, and the lesser included offense of possession of a drug-related object. Forte was sentenced as a recidivist to concurrent terms of life imprisonment without parole for malice murder and kidnapping with bodily injury, five consecutive years for possession of a firearm during the commission of a felony, and 12 concurrent months for possession of a drug-related object. Although the trial court purported to merge felony murder into the malice murder conviction, the former was actually vacated by operation of law. See

affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on March 7, 2011, Isaiah Davis borrowed Shendora Thomas's car. At the time, Davis and Shendora were dating. Davis did not return the car, and the next day, in response to a phone call, Davis informed Shendora that the car had broken down at his mother's house in Alabama. Shendora then asked her brother, Blanchard Thomas, to drive her to retrieve her car, which Blanchard did. At Davis's mother's home, Blanchard and Shendora encountered Davis, but Shendora's car was not there. While Blanchard and Shendora were standing outside, N. B. walked up the road. N. B. was distraught and had the keys to Shendora's car in her hand. Shendora recognized her keys, and N. B. offered to show Shendora where her car had been abandoned. On the way, N. B. explained to Shendora that Davis had held her against her will the previous day and had raped her. At one point on the day of the alleged rape, N. B. was able to contact

Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On November 12, 2013, Forte filed a motion for new trial, which was amended by new counsel on August 30, 2016. The trial court denied the motion on January 11, 2017, and Forte timely filed a notice of appeal. Thereafter, this case was docketed to the August 2017 term of this Court and submitted for decision on the briefs.

a friend and tell him that Davis was holding her against her will. That friend contacted N. B.'s family, and family members became so upset and agitated that a police officer had to call for backup when he met with the family to take their report of N. B.'s abduction.

When Shendora, Blanchard, and N. B. arrived at Shendora's car, the engine would not turn over. Shendora decided to stay with her car in order to have it jump started, and Blanchard offered to drive N. B. to her grandmother's home in Columbus. In the meantime, a large group of N. B.'s relatives and friends had gathered at N. B.'s grandmother's home. Some of them, including Forte, had been searching for Davis earlier in the day. Testimony indicated that Forte worked for N. B. by selling drugs. When N. B. and Blanchard arrived, N. B. ran inside her grandmother's house. At that point, a group of at least six men, including Joel Thomas, Michael Ingram, and Forte, confronted Blanchard and demanded to know where they could find Davis. Joel testified that, prior to the time he joined the confrontation, "Forte and Ingram had [Blanchard's] truck." The crowd of N. B.'s friends and relatives was angry and emotions were raging. Joel, Ingram, Forte, and others, were yelling at Blanchard. Joel testified that Forte, who was very angry, told Blanchard "he . . . was going to take him to

3

[Davis]" and threatened that it was "either going to be [Blanchard] or [Davis]." Keedra Brummit, who was also on the scene, testified that Jody Perry was one of the men in the group around Blanchard's truck. She further testified that Jody pointed his finger at Blanchard and demanded that Blanchard take them to find Davis. Joel, Ingram, and Forte then got into Blanchard's SUV, with Forte in the front passenger's seat. Keedra and Jody followed in Keedra's white Buick. Several blocks later, Joel and Ingram exited Blanchard's car and got into Keedra's car, leaving Forte alone with Blanchard. Shortly thereafter, Blanchard's SUV stopped under a bridge, and Keedra heard a gunshot. She then saw Forte running away from Blanchard's car. An employee of a nearby business also saw someone running away and described the person he saw running in a manner that was consistent with Forte's characteristics. Both Keedra and Joel identified Forte as the one who shot Blanchard, though they did not see the event occur. When Forte was eventually apprehended by police, he was witnessed placing a white substance in his mouth, and a glass smoking device was found in his pocket.

This evidence was sufficient to enable the jury to find Forte guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v.

4

Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This remains the case despite Forte's contention that the evidence was insufficient to support the charge of kidnapping and, concomitantly, the charge of felony murder predicated on kidnapping. The indictment charged Forte, along with Joel and Keedra, with felony murder predicated on kidnapping, which occurs when a person "abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will," and with kidnapping with bodily injury based on the victim's murder. See OCGA § 16-5-40 (a) and (d) (4). Here, there was evidence that, in the midst of an emotionally volatile situation, Forte and a group of men "had Blanchard's truck," screamed at Blanchard, ordered Blanchard to take them to Davis, and threatened Blanchard that it was "either going to be Blanchard or Davis" if Blanchard failed to do so. Therefore, contrary to Forte's argument, there was sufficient evidence to enable the jury to find that Forte was guilty of kidnapping Blanchard and forcing him to transport Forte and the others against his will beyond a reasonable doubt. Jackson v. Virginia, supra.

2. Forte contends that the trial court erred by giving the jury an incomplete charge on malice murder. The record shows that, in its oral charge to the jury,

the trial court apparently forgot to read the final paragraph of the standard charge on malice murder which defines the concept of malice. The record further shows, however, that a written copy of charges was sent out with the jury, and, in this written copy, the charge on malice murder was complete. Forte did not object to the jury charge, so his contention must be considered under the plain error doctrine. See OCGA § 17-8-58 (b).

In <u>State v. Kelly</u>, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011), we explained that, to determine plain error in jury instructions under OCGA § 17-8-58 (b), there are four things which must be considered.

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations, punctuation and emphasis omitted.) Id. at 33 (2) (a). Even if we assume that Forte could satisfy the first two requirements, he has not shown that

6

the trial court's mistake in reading the charge affected his substantial rights in such a manner as to affect the outcome of the trial court proceedings. The jury, during its deliberations, had the entire charge to consider. Therefore, the jury did, in fact, have a full set of instructions with which to reach a decision.

Judgment affirmed. All the Justices concur.

Decided December 11, 2017.

Murder. Muscogee Superior Court. Before Judge Rumer.

Victoria L. Novak, for appellant.

Julia F. Slater, District Attorney, Matthew J. Landreau, William D. Kelly, Jr., Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.