**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 16, 2021**

# In the Court of Appeals of Georgia

A21A0531. HARRIS v. THE STATE.

REESE, Judge.

A Houston County grand jury indicted Shalita Harris on one count each of homicide by vehicle in the first degree, reckless driving, speeding, and driving too fast for conditions, and two counts of homicide by vehicle in the second degree in connection with a school bus crash that resulted in the death of a six-year old passenger.[1] The jury found Harris guilty of homicide by vehicle in the first degree and reckless driving. Harris appeals from the denial of her amended motion for new trial. For the reasons set forth infra, we affirm.

---

[1] OCGA §§ 40-6-180; 40-6-181; 40-6-390 (a); 40-6-393 (a), (c); see OCGA § 40-6-183 (a) (3).

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the jury's verdict, and we do not weigh the evidence or determine witness credibility.[2] So viewed, the record shows the following. On January 29, 2018, Harris, a school bus driver for Houston County schools, was driving on Forest Park Drive as part of her afternoon drop-off route. She was carrying 33 elementary school students, ranging in age from pre-kindergarten to fifth grade, and one adult school bus monitor. One section of the road went downhill at a gradient of approximately 11.9 percent, and in the downhill portion there was a sharp turn to the left. The posted speed limit for the road was 25 miles per hour ("mph"), but the suggested speed for the curve, as displayed on a yellow traffic sign, was 15 mph. It was common for children to throw their hands up as they entered this part of the route, "as if they were on a roller coaster[,]" and yell "hands up[;]" this day was no different.

According to testimony at trial, Harris had previously driven the bus on this stretch of road without issue. However, the bus monitor testified that on this day the bus's front wheels left the road as it entered the curve, and Harris was unable to regain control. The bus left the road, struck nearby trees and a dirt embankment, and

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

flipped over on its right side. Six-year-old A. H., who was sitting behind Harris and near the aisle, was ejected from the bus during the crash and suffered fatal injuries. A. H. was transported to the hospital, but ultimately died from the trauma she sustained during the crash.

At trial, Harris's brother testified that he had spoken with her just after the crash, and that she had stated "I was going too fast." Additionally, a student who rode on the bus that day stated that although it did not feel "much faster than the previous times[,]" it did feel fast that day.

Both the State and Harris offered expert testimony regarding key details surrounding the crash. The State's expert testified that the speed at which a school bus could safely navigate the curve on the road was between 17 and 20 mph. He testified that at the time the bus left the road, however, it was traveling between 29 and 35 mph. He concluded that "the bus had to [have been] traveling at least 24.516 [mph] to cover the distance from the roadway exit point to the first major impact." In contrast, Harris's expert testified that he believed the bus was traveling approximately 17.75 mph when it entered the curve, and approximately 24 mph when it left the road.

The trial court granted Harris's motion for directed verdict on vehicular homicide in the second degree and the underlying offense of driving too fast for

3

conditions. The jury found Harris guilty of homicide by vehicle in the first degree and reckless driving, and not guilty of homicide by vehicle in the second degree and speeding. Immediately after the trial, Harris's counsel spoke with two jurors and learned that some of the jurors had obtained extra-judicial information about the difference in severity of the charges during deliberations. All of the jurors testified at the hearing on Harris's amended motion for new trial, and some confirmed they had reviewed or had been told about differences in severity of the charges facing Harris. The trial court denied Harris's amended motion for new trial, and she subsequently appealed.

> On appeal from a criminal conviction, [the appellate court] view[s] the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[3] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the reviewing court] must uphold the jury's verdict.[4]

---

[3] 443 U.S. 307.

[4] *Rankin*, 278 Ga. at 705 (additional citations omitted).

Additionally, "motions for new trial because of improper conduct of jurors are addressed to the sound discretion of the trial judge. Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination."[5] While "[a]ppellate review of the jury charge is de novo[,]"[6] "[w]e review the trial court's refusal to give a requested charge for an abuse of discretion."[7]

With these guiding principles in mind, we now turn to Harris's claims of error.

1. Harris argues that the trial court abused its discretion in denying her motion for new trial because some jurors researched details regarding the sentencing guidelines and the differences in the charges. Specifically, she contends that because some jurors learned of the difference between first and second degree vehicular homicide, the trial court should have granted her a new trial.

> When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred. To upset

---

[5] *Gaines v. State*, 274 Ga. App. 575 (618 SE2d 197) (2005) (citation and punctuation omitted).

[6] *Jordan v. State*, 322 Ga. App. 252, 255 (4) (a) (744 SE2d 447) (2013).

[7] *Jones v. State*, 352 Ga. App. 380, 386 (2) (a) (834 SE2d 881) (2019) (punctuation and footnote omitted).

5

a jury verdict, the misconduct must have been so prejudicial that the verdict is deemed inherently lacking in due process.[8]

Here, all 12 jurors testified at the motion-for-new-trial hearing, but pursuant to OCGA § 24-6-606 (b), did not speak to the specifics of their deliberations.[9] Some jurors testified that they did not know about the different sentencing possibilities for the charges, others testified that they learned of the difference between the first and second degree charges during deliberations from other jurors, while some admitted that they had personally searched online for the difference in severity of the charges. However, in contrast to the cases relied on by Harris,[10] the extra-judicial information

---

[8] *Fuller v. State*, 313 Ga. App. 759, 762 (2) (722 SE2d 453) (2012) (citations and punctuation omitted).

[9] See *Beck v. State*, 310 Ga. 491, 495 (1) (852 SE2d 535) (2020) ("Although a juror may testify to any facts bearing upon the question of the existence of any extraneous influence, the court may not inquire into the subjective effect of such information on the particular jurors.") (citation and punctuation omitted).

[10] *Lloyd v. State*, 339 Ga. App. 1, 9-10 (3) (792 SE2d 445) (2016) (physical precedent only) (reversing convictions because the State did not overcome the presumption of prejudice when a juror asked a police officer during deliberations about the concept of "stand your ground" in a murder trial); *Chambers v. State*, 321 Ga. App. 512, 521 (1) (739 SE2d 513) (2013) (physical precedent only) (holding that the State did not overcome the presumption of prejudice when a juror used "her own Internet research to dispense with the [defendant's affirmative] defense of habitation[ ]").

obtained by some of the jurors in this case had to do with the difference in the severity of the crimes as opposed to the underlying substantive law or evidence.[11] Therefore, the misconduct here was not "so inherently prejudicial as to require a new trial[.]"[12] Accordingly, the trial court did not abuse its discretion as "the [jurors'] actions, while improper, were not so prejudicial as to have contributed to the conviction, and were harmless beyond a reasonable doubt."[13]

2. Harris next argues that the evidence was not sufficient to support her convictions for reckless driving and homicide by vehicle in the first degree.

Under OCGA § 40-6-390 (a), "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." Additionally, "[t]he offense of reckless driving may be committed in a variety of ways, and whether a defendant's manner of driving under the circumstances

---

[11] See *Burney v. State*, 309 Ga. 273, 293 (5) (845 SE2d 625) (2020) ([T]he types of misconduct that could injure a defendant's due process rights include "making an unauthorized visit to the crime scene and then presenting the findings to the jury panel; privately discussing the defendant's guilt prior to deliberations in violation of the court's instructions; or improperly accessing outside news sources.") (citation and punctuation omitted).

[12] *Woodruff v. State*, 339 Ga. App. 707, 709 (3) (792 SE2d 471) (2016) (citations and punctuation omitted).

[13] Id. at 710 (citation and punctuation omitted).

demonstrated a reckless disregard for the safety of others is a question that is reserved for the jury."[14]

Under OCGA § 40-6-393 (a),

[a]ny person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section 40-6-163, Code Section 40-6-390 or 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the first degree[.]

Here, Harris was charged with reckless driving for entering a curve at a speed that did not allow her to maintain control of the school bus while carrying students. At trial, the State presented evidence showing that Harris had stated shortly after the collision "I was going too fast[,]" and one of the student passengers testified that the bus felt fast that day. Additionally, the State's expert opined that the speed at which a school bus could safely navigate the curve was between approximately 17 and 20 mph, while the bus in this case was traveling between approximately 29 and 35 mph when it left the road. At trial, the State's expert confirmed it was his "impression that the [bus] was going too fast[.]" Although Harris's expert disagreed with this conclusion, "[i]t was for the jury to determine the credibility of witnesses . . . , as well

---

[14] *Bautista v. State*, 305 Ga. App. 210, 212 (1) (699 SE2d 392) (2010).

8

as the weight to be accorded the expert . . . testimony."[15] Additionally, "[circumstantial] evidence need not exclude every inference or hypothesis except the guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference beyond a reasonable doubt, of guilt."[16] In light of the foregoing, the evidence presented at trial was sufficient for a reasonable jury to find Harris guilty of reckless driving.

Regarding Harris's conviction for first degree vehicular homicide, both parties stipulated that A. H.'s death was "caused by multiple traumatic injuries sustained as a result of the bus wreck." Further, one commits first degree vehicular homicide if she causes the death of another person through reckless driving.[17] Thus, because the evidence was sufficient to support Harris's conviction for reckless driving, which led

---

[15] *Hamilton v. State*, 281 Ga. 501, 502 (1) (640 SE2d 28) (2007) (citations omitted).

[16] *Evans-Glodowski v. State*, 335 Ga. App. 484, 487 (1) (781 SE2d 591) (2016) (citation and punctuation omitted).

[17] OCGA §§ 40-6-393 (a); 40-6-390 (a); see *Walden v. State*, 273 Ga. App. 707 (616 SE2d 462) (2005) ("Because we find there was ample evidence that [the defendant] recklessly drove the [vehicle] in violation of OCGA § 40-6-390, we affirm the conviction for first degree vehicular homicide based on the predicate violation of reckless driving.").

to A. H.'s death, a reasonable jury could have found her guilty of homicide by vehicle in the first degree.[18]

3. Harris argues that the trial court erred when it charged the jury. Specifically, she asserts that the court committed plain error in misstating the definition of a crime and omitting the intent element, and that the court abused its discretion by refusing to give a charge on criminal negligence and on the defense of accident.

Because Harris did not object to the jury charge at trial before deliberations, we review the court's charge on the definition of a crime for plain error.[19] When reviewing for plain error, to summarize it "succinctly in the context of OCGA § 17-8-58 (b), the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[20] Additionally, "when considering whether error exists in the instructions to the jury, [the reviewing court] considers the instructions as a whole."[21]

---

[18] See *Bautista,* 305 Ga. App. at 212 (1).

[19] *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011); see OCGA § 17-8-58 (b).

[20] *Kelly*, 290 Ga. at 33 (2) (a) (citation and punctuation omitted).

[21] *Jackson v. State*, 306 Ga. 69, 82 (3) (829 SE2d 142) (2019) (citation and punctuation omitted).

Here, when the trial court instructed the jury on the meaning of a crime, it did not reference intent. However, the court provided a thorough instruction on the element of intent immediately after its charge defining a crime. Moreover, intent in the context of traffic offenses, such as reckless driving, only requires that the State prove "*general* criminal intent, which is simply the intent to do the act which results in the violation of the law, and not the intent to commit the crime itself."[22] Thus, even assuming arguendo that the trial court's omission of intent from its charge was an error or defect not subject to reasonable dispute, Harris "has not shown that the trial court's mistake in reading the charge affected [her] substantial rights in such a manner as to affect the outcome of the trial court proceedings[,]" and therefore did not constitute plain error.[23]

Harris also claims that the trial court abused its discretion when it refused to instruct the jury on the defense of accident and on criminal negligence. However, "a jury charge on the defense of accident to a strict liability traffic offense is available only where there is evidence, however slight, that the defendant did not voluntarily

---

[22] *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012) (citations and punctuation omitted).

[23] *Forte v. State*, 302 Ga. 726, 729 (2) (808 SE2d 658) (2017).

11

commit the prohibited act."[24] Here, there was evidence of the bus's speed and of the road's features, but the trial court found there was no evidence presented related to an accident defense. Because there was no evidence demonstrating that "the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force[,]"[25] the trial court did not abuse its discretion.[26]

As it relates to Harris's argument regarding criminal negligence,

> When [reviewing] a refusal to give a requested instruction, [the appellate court] must look to the jury charge as a whole, and if the jury charge as a whole accurately and fully apprised the jury of the law to be applied in its deliberations, then the refusal to give an additional instruction, even if that additional instruction were accurate, does not amount to error.[27]

Moreover, "[w]here a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict

---

[24]*Ogilvie*, 292 Ga. at 7 (2) (b).

[25] Id.

[26] *Jones*, 352 Ga. App. at 386 (2) (a).

[27] *Harrison v. State*, 309 Ga. App. 454, 457 (2) (a) (711 SE2d 35) (2011).

amply authorized by the evidence."[28] Therefore, even assuming arguendo that a charge of criminal negligence would have been proper, given the totality of the instruction provided, which included charges on the definition of a crime, intent, reasonable doubt, the elements of the crimes charged, and circumstantial and direct evidence, the trial court's charge was an accurate appraisal of the law. Thus, the trial court did not abuse its discretion in refusing to charge on criminal negligence.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[28] *Daniels v. State*, 310 Ga. App. 562, 565 (2) (714 SE2d 91) (2011) (citation and punctuation omitted).